Chicago & Alton R. R. Co. v. Randolph P. Anderson, as Administrator of the Estate of Randolph Anderson, Deceased.

1. ORDINARY CARE—*Exercise of, etc.*—The law demands of every one the exercise of ordinary care for his own safety, and gives him no standing to complain of the mere negligence of another if he has failed to exercise such a degree of care.

2. SAME—*Exercise of, on Specified Occasions.*—Whether ordinary care has been exercised upon any specified occasion, depends upon the peculiar circumstances of the occasion; that which one ought to do to secure immunity from injury under certain circumstances, might be dangerous under other circumstances. One in the exercise of ordinary care might omit at times that which under other circumstances none but the most thoughtless would neglect.

3. SAME—*The Legal Test.*—The test always is, what would a man of ordinary prudence have done or omitted in the particular instance, and this can not be declared as a matter of law, but must be left as a pure question of fact for the jury.

4. SAME—*Instructions.*—An instruction which tends to relieve the plaintiff of the exercise of ordinary care for his safety, is erroneous.

**Memorandum.**—Action for damages. Death resulting from negligent acts. In the Circuit Court of Macoupin County; the Hon. JACOB FOUKE, Judge, presiding. Declaration in case; plea of not guilty; trial by jury; verdict and judgment for plaintiff; appeal by defendant. Heard in this court at the May term, 1894. Reversed and remanded. Opinion filed December 14, 1894.

## STATEMENT OF THE CASE.

On the 17th day of December, 1892, appellee's intestate, Randolph Anderson, and one John Lynch, employes of the Carlinville Coal Company, were engaged in pushing a car loaded with slack coal in a southerly direction along a track called the "slack coal track," their intention being to move the car to and upon another track called the "main coal track" by means of a switch which connected those tracks. Near the point of intersection where the two tracks occupied practically the same ground, the car that Anderson and Lynch were pushing collided with certain empty cars which appellant's servants, in charge of one of its freight trains, had, by the aid of one of its engines, put in rapid motion upon the "main coal track" with the view of causing them to run along that track to its northern end, where they were needed to be loaded with coal by the coal company.

As a result of the collision the car which Randolph and Lynch were pushing was driven violently backward so that it ran upon Randolph and instantly killed him.

C. & A. R. R. Co. v. Anderson.

The "main coal" and the slack track ran past the shaft of the mine of the coal company.

Appellee's case upon the pleadings and proof was that it had long been the custom of the appellant company to put in empty cars to be loaded with coal at the north end of the main coal track by means of a switch which there connected that track with the track of appellant's road; that it had long been the custom of the appellant company to move its cars and engines upon the south end of the main coal track only for the purpose of taking out cars loaded with coal; that both the appellant company and the coal company had for some years transacted the business of receiving empty cars to be loaded with coal and of shipping loaded cars in accordance with these customs; that in pursuance thereof the coal company maintained an appliance called a "car puller," at the shaft, by which cars intended to be loaded with coal were moved from the northern portion of the main coal track to the mouth of the shaft, those to be loaded with lump coal being kept upon the "main coal track" while others that were to be filled with slack coal were transferred to the slack track through a switch which connected these two tracks some distance north of the shaft and that in further pursuance of the custom the coal company caused its employes to push the cars, when loaded, down these tracks to and upon that part of the "main coal" track south of the shaft, there to be taken into the trains of the appellant company. That appellee's intestate and said Lynch had for some years been in the employ of the coal company and were fully advised of the mode adopted by the two companies of receiving empty cars and shipping them, when loaded, and that on the day in question they, as their duty required, undertook to push the loaded car down the "slack track" to the "main coal" track; there he slipped, and in doing so they relied, and had the right to rely, upon the observance of the established usage and customs to exempt them from dangers of like character as that which caused the death of Anderson, and that the appellant company, in violation of these usages, attempted to put in

empty cars at the south end of the main coal track, and without any notice or warning whatever, caused them to run violently along the track so that they collided with the car that Anderson and Lynch were pushing, and thus, as appellee claimed, negligently caused the death of his intestate.

The appellant company denied the existence of the alleged custom to set empty cars in only at the south end of the track and claimed that, on the occasion in question, its servants moved the train into the south end of the main coal track and took into the train all loaded cars standing thereon and left that track free of cars, and set the switches connecting it with the slack track so that it was unobstructed for the passage of the empty cars from the southern to its northern end; that the car which the deceased and Anderson were pushing was, when they took out the loaded cars, standing on the slack track at the mouth of the shaft partially loaded, and that either Anderson or Lynch then told them that it was not to be shipped that afternoon; and they consequently believed, and had good reasons to believe, that the empty cars might be caused to pass over the main coal track from one end to the other with entire safety.

The appellant company denied the existence of the other alleged usages and custom, and contended that notice that the empty cars were about to be moved upon the main coal track was given by sounding the whistle and ringing the bell of the engine before the train was started.

The evidence was conflicting upon all points.

The action below was case by the appellee, administrator, to recover under the statute the damages sustained by the widow and next of kin of his intestate. Judgment for the plaintiff, $3,250. Appeal by the defendant company.

APPELLANT'S BRIEF, RINAKER & RINAKER, ATTORNEYS.

The law requires that men shall use the senses with which nature has endowed them, and when, without excuse, one fails to do so, he alone must suffer the consequences, and he

is not excused when he fails to discover the danger, if he made no attempt to employ the faculties nature has given him.  Day v. C. C. & St. L. R. R. Co. (Ind.), 36 N. E. Rep. 854.

PEEBLES & PEEBLES and A. N. YANCEY, attorneys for appellee.

MR. JUSTICE BOGGS DELIVERED THE OPINION OF THE COURT.

The contention of the appellee is, that the servants of the railway company negligently and in violation of a long established custom, and without giving any warning or notice whatever, backed the empty cars at a dangerously rapid rate of speed over the main coal track, and by such negligence caused the death of said Randolph Anderson, who, as appellee insists, had every reason to believe that he might with entire safety aid in moving the car of slack coal from the slack to the main coal track.

In this and all like cases where the law is invoked to require one party to respond in damages to another for the result of mere negligence, it becomes a question of first importance whether the party who was injured was also negligent.

The law demands of every one that he shall exercise ordinary care for his own safety, and gives him no standing to complain of the mere negligence of another if he has failed to exercise that degree of care.

Whether ordinary or due care has been exercised on any specified occasion, depends upon the peculiar circumstances of the occasion.

That which one ought to do in order to secure immunity from injury under a certain state of case, might be a very reckless and dangerous thing to do under other surroundings.

One in the exercise of ordinary care might omit at times that which, under other circumstances, none but the most thoughtless and reckless would neglect.

The test always is, what would a man of ordinary pru-

dence have done or omitted in the particular instance, and this can not be declared as matter of law, but must be left as a pure question of fact to the judgment of the jury.

In the case at bar, it was a question of fact for the jury to determine from a consideration of the circumstances, whether the deceased did, or omitted to do, that which an ordinarily cautious man would have done or omitted. The determination of this question demanded the careful and impartial consideration of all the facts proven, and the application thereto, of the sound and discriminating judgment and experience of those who sat as jurors in the case.

No rule or principle of law declared that the deceased should have done any specified act or pursued any given course, in order that he might be deemed to have exercised ordinary care, nor did any rule or principle of law relieve him from the performance of any act, or the exercise of watchfulness or vigilance. The law offered no solution to the question and could offer none, for it was the sole province and duty of the jury to solve it from the facts established by the evidence.

Therefore it is clear that it was error to give instruction No. 2 asked and given in behalf of the appellee. It was as follows:

" The court instructs the jury that if they believe from the evidence that it was the right and duty of Randolph Anderson, at the time and place in question, to move the slack car in question from the switch on which it stood (if the jury believe from the evidence that such car did stand on such switch) to the main track of the defendant, that while he would not be permitted to close his eyes and ears to what comes within the range of these senses, yet if the jury believe from the evidence that he had the right, by the previous course of dealing or conduct, to believe that no train would be run by the defendant on that part of the track at that time, it was his right to give his undivided attention to his work, and he would be justified in assuming that the defendant would not molest him or render his position hazardous without proper and sufficient notice or warning."

The employes of the appellant company had removed from the main coal track all cars that were upon it.   They were told by persons upon whom they might reasonably rely that the car of slack coal was not to be moved from the track upon which it stood.   They set the switches connecting the two tracks, so that the empty cars might pass freely along the entire length of the main coal track, and thought it entirely safe to run those cars upon it.

The deceased and his fellow-workmen knew that all the loaded cars had been taken out.   They understood that it was not the custom to put empty cars in at that end of the track.   Hence they believed that they could, with safety, change the switch and move the car of slack coal along the slack track, through the switch and to and upon the main coal track.

The employes of each respective company acting upon presumptions and conclusions that seemed to them to be well grounded, proceeded to prosecute their separate work without reference to each other, but with full confidence that no one would be imperiled by what they were doing or about to do.

Whether in so doing any one of the workmen might in the exercise of ordinary care devote " his undivided attention to his work," and become oblivious to all else that was occurring or being done by others near to, and about him, was a matter of fact to be determined by the jury upon consideration of all the facts and circumstances, of which there were many bearing thereon.   It could not be decided by the court as a point in law, and so declared to the jury by an instruction.   The instruction was erroneous in another respect.   It advised the jury that while the law would not permit the deceased to close his eyes and ears to what came within the range of these senses, yet if certain facts were proven he might lawfully give his undivided attention to his work, etc.

From this the jury could but understand that the deceased was exempted by " law " from all duty to look or listen or attempt to see or hear; that the law demanded no more

from him than that he should not shut his eyes and close his ears so that he could not see or hear.

It is true that the court, in instructions given in behalf of the appellant company, repeatedly told the jury that it was the duty of the deceased to exercise ordinary care and prudence for his own safety. But the difficulty is that the instruction under consideration did not leave the jury free to determine from the evidence whether that degree of care had been exercised.

In effect it advised the jury that that question was controlled in a measure by the rules of law, and assumed to tell them that if the deceased " had the right by the previous course of dealing and conduct to believe that no train would be run by the defendant on that part of the track at that time, that it was his right to give his undivided attention to his work."

If he had the legal right to devote his entire thought and attention to the work of pushing the car it would follow he could not be required at the same time to exercise any degree of vigilance or care for his safety.

The jury returned the following special finding, viz. :

Did the deceased look to see if any cars were approaching from the south ?

Answer, Yes.

Counsel for the appellant company, in their brief, aver that there was no evidence whatever to support this finding.

Counsel for the appellee are content to reply that the jury were warranted in finding as they did without referring us to any proof upon the point.

We have carefully examined the record and have been unable to find any testimony in support of the finding.

John Lynch was the only witness who gave testimony relating thereto. He stated that it was about 250 feet from the shaft to the switch; that he walked to the switch and looked down the track, saw no train and threw the switch; then walked back to the shaft where Anderson was; that they nipped the car with a bar about fifty feet, which occupied about ten minutes of time, and then took hold of the

car and pushed for about five minutes, when the collision occurred; that he did not look down the track after he commenced to move the car with the pinch bar, and that he did not know whether Anderson did or not.

It seems clear that the finding is wholly without support in the evidence.

The evidence upon other questions material to the right of the appellee to recover was conflicting, and altogether, the case, as presented to the jury, was such that it was essential that the instructions should have been accurate.

For the errors indicated the judgment must be reversed and the cause remanded.