Jacoby B. Jacobsen, Appellant, v. Walter J. Cummings and Daniel C. Green, Receivers, et al., Appellees.

Gen. No. 41,904.

Opinion filed April 20, 1943.

H. H. Patterson, of Chicago, for appellant; Edmund C. Maurer, of Chicago, of counsel.

Frank L. Kriete, Warner H. Robinson and Arthur J. Donovan, all of Chicago, for appellees; John R. Guilliams, of Evanston, of counsel.

Mr. Presiding Justice Sullivan delivered the opinion of the court.

This action was brought by plaintiff, Jacoby B. Jacobsen, to recover damages for personal injuries alleged to have been sustained by him on May 24, 1939 by reason of defendants' negligence. At the close of plaintiff's evidence defendants' motion to direct a verdict in their favor was denied and a similar motion made by defendants at the close of all the evidence was also denied. The cause was submitted to a jury which found the defendants guilty and assessed plaintiff's damages at $10,000. Thereafter the trial court granted defendants' motion for judgment notwithstanding the verdict and entered judgment in favor of defendants and against plaintiff. Plaintiff appeals.

Plaintiff's complaint alleged substantially that on May 24, 1939 defendants were common carriers of passengers for hire; that they were in possession, control of and operating a certain northbound streetcar on

Wabash avenue at its intersection with Wacker drive; that said streetcar came to a stop at the regular stopping place on Wabash avenue just south of Wacker drive; that plaintiff was in the act of boarding said standing streetcar when it started with a sudden and violent jerk and he was thereby thrown to the street and injured; and that he was at all times in the exercise of ordinary care for his own safety.

Defendants' answer denied all the material allegations of plaintiff's complaint.

Plaintiff contends that "defendants were negligent in starting said streetcar as plaintiff was in the act of boarding it; that they did not afford him reasonable time and opportunity safely to board said streetcar; that said streetcar was negligently started while he was in the act of boarding it, causing him to be thrown and injured."

While one of defendants' northbound Wabash avenue streetcars was stopped to take on and discharge passengers at its regular stopping place on the south side of Wacker drive, plaintiff, in attempting to board said streetcar, took hold of the center bar on the rear platform thereof with his right hand and placed one foot on the step leading up to said rear platform. When he was in that position "the car took a sudden jerk forward at a fairly good rate of speed." As a result of such jerk plaintiff was thrown off his balance. His feet landed on the street and he continued to hold on to the center bar with his right hand. Plaintiff testified that "from where I tried to get on when the car was standing until I finally landed in the street, as far as I remember, I went to the middle of Wacker drive and fell there. So far as my hold on the bar was concerned, I could not hold on any longer. When I went down I fell on my left side. I was running along holding onto the car and trying to get my bearings, but it was impossible." He further testified that

he thought the streetcar traveled 80 to 90 feet after he fell. He stated on cross-examination that he held onto the center bar of the car after the latter started up until he reached about the middle of Wacker drive, which was about 70, 80 or 90 feet, when he could hold on no longer and was thrown to the pavement; that after the streetcar started it reached a speed of about 15 to 20 miles an hour, which was ''faster than I could catch up with''; and that he did not let go his hold on the center bar ''because then I tried to straighten myself up and get on it.'' It is a fair inference that when plaintiff used the expressions that ''he was trying to get his bearings'' and that ''he was trying to straighten himself up'' that he meant that he was trying to get his feet in a proper position so that he could coordinate their movement with the movement of the streetcar.

In passing upon defendants' motion for judgment notwithstanding the verdict the trial court was bound to act in accordance with the established rule of law that the evidence most favorable to plaintiff with all its reasonable inferences must be taken as true (*McCarthy v. Rorrison*, 283 Ill. App. 129), and that explanatory, conflicting or contradictory evidence must be excluded from consideration.

In view of plaintiff's evidence it must be conceded for the purposes of this appeal that plaintiff was in the exercise of ordinary care while he was in the act of boarding the standing streetcar and that defendants' servants were guilty of negligence in starting the streetcar from its standing position while plaintiff was in the act of boarding it.

Defendants seem to infer that if plaintiff had let go of his handhold simultaneously with defendants' negligent conduct in starting the streetcar or if he had let go of his handhold at some indefinite point after the car had been negligently started he would not have

been injured. These inferences are not permissible under the only evidence that may be considered on this appeal.

It is defendants' position here and it was undoubtedly the theory upon which the trial court entered the judgment notwithstanding the verdict that, while plaintiff was in the exercise of due care in his original attempt to board the standing streetcar, he was guilty of contributory negligence as a matter of law in maintaining his hold on the center bar of the platform and attempting to board the streetcar after it was in motion. In view of the evidence and the reasonable inferences that may be drawn therefrom we are of opinion that plaintiff was not guilty of contributory negligence as a matter of law but that the question as to whether he was or was not guilty of contributory negligence under the circumstances was one of fact for the jury to determine.

As heretofore shown, after plaintiff was thrown from the car he tried to get his bearings—he tried to straighten himself up. In other words he was thrown off the car in rather a tangle, from which he tried to extricate himself. It must be remembered that plaintiff held onto the bar of the car with his right arm outstretched in front of him and with his body and feet in an awkward position from which he tried to "straighten himself up." Defendants argue in effect that if plaintiff had let go of the center bar at the time he was thrown from the car or shortly thereafter he would have escaped injury. It might be said with just as much consistency that so long as plaintiff was in for a fall in any event he might as well have taken his fall and had it over with when the jerk of the car threw him off. It is a reasonable inference, considering his awkward position, that if he had let go of the bar when the car jerked him off, he most certainly would have been thrown to the pavement and injured. We think that it was a matter of natural impulse and

instinct with plaintiff, as it would have been with any ordinarily prudent man, to hold onto the bar to save himself from a fall, if possible.

Defendants state in their brief that "the emergency rule has no reasonable application to the facts disclosed by plaintiff's evidence" and that said rule "only applies to an attempt to escape from sudden danger in the creation of which the injured person had no part and where the injured person is required to act immediately and without time to think or consider."

It cannot be seriously questioned but that plaintiff was confronted with an emergency created by defendants and without fault on his part. From the instant the streetcar "took a sudden jerk forward at a fairly good rate of speed," throwing plaintiff from the step of the car, he was compelled to choose between two alternatives. He had to either relinquish his hold on the center bar immediately or within a short distance, in the awkward position that he was, and run the risk of being thrown violently to the ground and injured or to hold onto the center bar while he was endeavoring to get on his feet properly so that he might get on the streetcar and thus save himself from injury. Plaintiff did attempt to escape from the sudden danger of being precipitated to the pavement by maintaining his hold on the center bar. He was required to act immediately and without time to think or consider. It is apparent that he chose what he thought was the wisest and safest course to get himself out of his perilous dilemma. No doubt plaintiff could have let go of his handhold before he was forced to do so, but it cannot be fairly concluded that by so doing he would be withdrawing to a place of safety. To have let go of the car in his then predicament plaintiff would have had to risk almost certain injury. Through no fault of his own he was confronted with an emergency fraught with sudden danger to himself and it cannot be said that all reasonable minds would agree that he did not act as

an ordinarily prudent person would have acted under the circumstances.

It is suggested in defendants' brief that a reasonably prudent man might run along with the car "5, 10 or 15 feet" holding onto the center bar but not for a distance of 70, 80 or 90 feet as plaintiff did. It must be borne in mind that it cannot be reasonably inferred from the evidence that plaintiff could have released his hold without injury to himself within 15 feet after the streetcar had been negligently started or within any other distance thereafter until he had to let go because of the increased speed of the car. He continued holding onto the bar in the same awkward position until he was forced to let go. The entire occurrence was over in a matter of seconds and we think it a fair inference that unless the streetcar was stopped plaintiff would have been injured if he had let go of the bar at any time after the streetcar had been negligently started. We also think it a fair inference that plaintiff, confronted as he was with sudden danger, felt that he could regain his footing and board the car before it had attained any considerable speed. When counsel for defendants was asked upon oral argument how long in his opinion plaintiff could have held onto the center bar of the platform under the circumstances in evidence without having been guilty of contributory negligence, he stated in effect that that was a matter of how one looked at it. This statement is certainly incompatible with defendants' contention that all reasonable minds must agree that plaintiff was guilty of contributory negligence.

In *Joliet Street Ry. Co. v. Duggan,* 45 Ill. App. 450, the facts were somewhat similar to the facts in this case. There the plaintiff's evidence showed that she attempted to board a standing streetcar; that just as she had one foot upon the step and her hand upon the rail the car started suddenly and she was dragged several feet and then thrown to the ground. It was con-

tended by the defendant that she was guilty of contributory negligence in holding onto the car after it started in motion instead of letting loose of it as she might have done. In that case the court said at pp. 451, 452:

"By continuing her hold upon the car after it started was appellee guilty of such contributory negligence as to preclude her from a recovery? The agitation and excitement which the sudden starting of the car doubtless produced upon the mind of appellee would appear to be sufficient reason for not holding her legally responsible for contributory negligence. The trying circumstances under which she had been placed by the negligent and wrongful act of appellant precluded that exercise of judgment of which the human mind is capable under less exciting conditions. *Apropos* is the language of Mr. Justice McAllister in *C. & A. R. R. Co. v. Becker,* 76 Ill. 25: 'When the defendant has been guilty of negligence, but seeks to defend on the ground that the party injured might have avoided the injury by the exercise of ordinary care and caution, it sometimes happens in such cases that, as a direct and immediate cause of the defendant's negligence, the party injured was placed in a position of compulsion and sudden surprise, bereft of independent moral agency and opportunity of reflection. In such a case, it would be against the common judgment of mankind to hold the injured party either morally or legally responsible for contributory negligence.' "

In *Smith v. Chicago City Ry. Co.,* 169 Ill. App. 570, the plaintiff had been riding as a passenger on one of defendant's streetcars with her four year old son. When the car stopped at an intersection two other passengers alighted first and then plaintiff helped her little boy down onto the ground, still holding his left hand and started to step down from the car herself. While she was in this position with one foot on the step and the other on the platform of the car and with her

left hand grasping the upright handrail and her right hand grasping the boy, the car started forward. The boy continued to cling to plaintiff's hand and after the car started was being dragged along, and plaintiff then jumped from the car to the ground and was injured. There was a verdict and judgment in her favor in the trial court and on appeal it was contended that the starting of the car was not the cause of plaintiff's injury because her act of jumping from the car intervened between such starting and her injury, and also that her conduct in continuing to hold onto the child after the car started and in then jumping from the car amounted to contributory negligence. While the facts in the *Smith* case are not in all respects similar to the facts in the instant case, the language used by the court therein concerning the emergency rule is applicable to the facts here. In that case the court said at p. 573:

"We are of the opinion that this contention is not sound. There existed a situation at the time the car started. The plaintiff had seen to it that her boy was upon the ground, and was herself in the act of alighting. Naturally the child clung to its mother and the mother to the child. To have shaken herself loose from the child after the car started and remained upon the car would have been to subject her child, in all probability, to injury. She was by the starting of the car under the circumstances placed in a position of being compelled to choose between two alternatives, subjecting her child to injury, or running the risk of injury to herself in attempting to alight from the car after it had been negligently started. She chose to alight and save her child. In so doing we think she acted reasonably and without negligence. In starting the car under the circumstances, the defendant was clearly negligent. *A carrier may not negligently place a passenger in a situation where the passenger is*

*bound to choose between two courses at her peril, and then interpose the defense that the act of the passenger was the intervening cause of the injury.*

"Upon the evidence we are of the opinion that the jury were justified in finding that the defendant was negligent, and that its negligence caused the injury to the plaintiff; and that the plaintiff was not guilty of contributory negligence." (Italics ours.)

In *Burger v. Omaha & C. B. St. Ry. Co.*, 139 Iowa 645, the facts were almost identical with the facts here except that in that case the plaintiff ran along side of the car only a matter of several feet, holding onto the rail of the car with his hand. The reasoning of the court and its conclusions in that case are peculiarly applicable here. There the court said at pp. 650, 651, 652, 653, 654, 655:

"Some of the witnesses for defendant testified that plaintiff continued his hold upon the handrails after the car started, and ran along beside the car a distance of several feet before his hold was broken or relinquished, and he fell. Predicating its request on the testimony to this effect, defendant asked an instruction directing the jury that, if the facts were found to be as thus testified to, plaintiff could not recover, because the wrongful starting of the car, if it was wrongfully started, was not the proximate cause of plaintiff's injury. In a further request the court was asked to say that, upon a state of facts so found, defendant could not be held liable for the injury sustained, and this because, 'by holding to the moving car and attempting to get on the same, plaintiff assumed any danger of injury arising therefrom.' In a still further request the court was asked to say that upon a state of facts so found plaintiff was guilty of contributory negligence as a matter of law, and hence could not recover. Each of these requests were refused, and the refusal as to each is denounced as error.

We think there was no error. According to our understanding, it is no part of the contention of counsel that plaintiff acted in violation of any duty he owed to himself when he seized the hand rails and made his initial attempt to step upon the car platform. On the contrary, as we gather, this seems to be the theory of counsel, upon which the requests are based: That, conceding the premature starting of the car, and that the same was negligent, if the immediate effect thereof was not to throw plaintiff to the ground, but, instead, he maintained his handhold on the rail, and ran alongside for some distance in an effort to accomplish a boarding, but finally relinquished his hold because unable longer to maintain the same, and there being no intervening act of defendant following the starting of the car, save the continued forward movement thereof, then the fall was not the proximate result of the wrongful act in starting the car, and, as that act is the sole matter of negligence complained of, as matter of law there can be no recovery. So, also, that under such circumstances the act of plaintiff in running alongside amounted in law to contributory negligence, and he assumed all risk of accident in so doing. The theory is well conceived in the interests of defendant, but it will not bear analysis. Of necessity it is based upon the supposition that the negligence of defendant ceased of effect once the immediate shock, incident to the premature starting of the car, had spent its force; that with the forward movement of the car, due care resumed its dominant sway. To hold in conformity with the view thus taken would be to write a new chapter on the law of negligence. Instead, it is the law, as universally applied, that where one by his negligent act thrusts another into a position of danger, the act—and the negligence by which it is clothed—continues and controls as long as the danger continues, unmodified by any independent, affirmative, and voluntary act

on the part of the person affected, or by some intervening controlling circumstance. And it is for the jury to say at what point or juncture, and in what particular, such person ceased to be dominated in his conduct by the act of negligence, and resumed voluntary control over his own actions. To search out and cite authorities in support of these conclusions would seem to be a work of supererogation. The case, as here made, is quite different from one where an intending passenger approaches a moving car and attempts to board it. . . . Here, however, the plaintiff occupied the relation of a passenger when the start of the car was made. 3 Thompson, Negligence, Section 2638. Another question—simple in its last analysis—is this: Where did the force which led up to and culminated in the accident which befell plaintiff have its origin? If traceable to the negligent conduct of defendant in starting and moving forward the car, and the accident would not have happened but therefor, then such conduct must be regarded as the proximate cause and the question in the case—if, indeed, the facts permitted of a question—was one for the jury.

"Giving attention, for a moment, to the question of contributory negligence, as made by the request, there is no theory on which to conclude as matter of law that due care for his own safety required of plaintiff that he release his hold upon the car the moment he was made aware of the fact that the same was in motion. Whether or not a person—brought to face an emergency—has acted with due care for his own safety is to be determined in all cases by the method of conduct. If what was done was no more than might have been expected from an ordinarily prudent person, placed under the like circumstances, then due care is not wanting. And if in the situation presented there is room for reasonable minds to differ as to the proper conclusion to be drawn, the question is one for a jury.

And, as far as we know, all the opinion and text writers agree upon this. Now, as we understand it, the car platform—approached by a step—was not guarded by a door or gate, so that, in getting on and off, passengers were not dependent on any action of the employees in charge of the car. As we have seen, plaintiff had partially effected a boarding when the car started. And if the witnesses for defendant were to be believed, the car started slowly and without any jerk. It is not improbable that reasonable minds might conclude that plaintiff was not negligent in trying to regain his footing on the car step, and thence to the platform. The question was therefore for the jury. Of course, if plaintiff on his own voluntary motion—and wholly disconnected and independent from the sudden start—ran alongside the car, and his fall was proximately due to some cause transpiring after the start was made, there might be room for the application of the principle of the cases on which appellant relies. But in the evidence there was no warrant for a finding that such was the situation with which the jury had to deal. As the argument concedes that the starting of the car was negligent, and assuming the truth of the testimony of defendant's witnesses, in our view the only question in the case is whether plaintiff was guilty of contributory negligence in not releasing his hold, at once, upon being made aware of the starting of the car. And such, by all the authorities, was a question for the jury.

"Further, on the subject of contributory negligence, the defendant requested the court to instruct the jury that, if found that plaintiff retained his hold upon the car after the start was made, and ran alongside the same for some distance before he fell, 'said action would be prima facie negligence on his part, . . . and he can not recover, unless he has shown, by a preponderance of the evidence, that said act was excusable by reason of danger, real or apparent, to him—that of

falling and receiving injury, if he should release his hold upon the car.' This request was also refused, and, as we think, rightly so. Fairly analyzed, it is the doctrine of the request, that, on finding that plaintiff retained his hold upon the car, and ran alongside thereof, justification for his conduct in so doing was possible in law only on the theory that it was, or appeared to him to be, necessary to so act in order to prevent injury to his person. It excludes the idea that justification for his conduct was possible, even though his motive in so acting was to regain his footing and complete an entrance in the car. By the great weight of authority it is the rule that in the case of one not yet a passenger contributory negligence does not arise, as matter of law, from the mere fact that an attempt has been made to board a moving car. 3 Thompson, Negligence, Section 3536. This being so, on no theory is it possible to say that one who sustains the relation of a passenger, and who has been thrown from his position by an act of negligence in the handling or operation of the car, must be held guilty of negligence *per se* if he attempts—either as the result of impulse, or in the reasonable belief that he can succeed—to regain his position and accomplish a boarding of the car. And, especially, such ought not to be the rule where, as here, according to defendant's witnesses, the start of the car was easy and slow.

"In the 11th instruction, given by the court on its own motion, the subject of contributory negligence was dealt with. In the instruction the law of the case—after advising the jury that plaintiff could not recover if, by his own negligence, he contributed to the happening of the accident and injury of which he complains—was thus stated: 'The fact, if it be a fact, that plaintiff did not let go of the car, but clung to the rail and ran along the side of the car trying to get on, after it had started, will not necessarily show that he was guilty of contributory negligence. If, by reason

478

of the starting of the car at the time and in the manner
in which it was started, an emergency arose, then, even
though plaintiff's action was ill judged if, under all the
facts and circumstances shown by the evidence, he
acted as would a man of ordinary prudence in a like
situation, and had used ordinary care in his original
attempt to get on the car, then he was not guilty of con-
tributory negligence,' etc. This instruction is assailed
on the grounds: '(1) That there was neither pleading
nor evidence upon which to submit to the jury the ques-
tion of such emergency; (2) that the instruction failed
to tell the jury what would have constituted contribu-
tory negligence of the plaintiff in clinging to the car
and running along beside it; (3) that the said instruc-
tion was confused and misleading upon the question of
contributory negligence, and incorrectly stated the law
on the subject.' There is no merit in any of these
grounds. Most certainly it is within bounds to say
that, in the sudden and unexpected starting of a street
car, while a passenger is attempting to board the same,
there is presented an emergency. According to the lexi-
cographers, an emergency is a sudden or unexpected
happening or occasion calling for immediate action.
Webster's Dictionary; Century Dictionary. And in
the pleading it was alleged, and without dispute the
evidence made proof, at least that the car was started
suddenly and without warning. In a previous instruc-
tion the court had correctly defined negligence, and the
jury had been told that it was incumbent on plaintiff
to show his own due care; that 'on his part he was
bound, where attempting to get on the car, and in all
his conduct with relation to it, to exercise reasonable
and ordinary care for his safety, and if he failed so to
do, he was negligent, and can not recover.' We think
no more could, in reason, be required. The instruction
correctly stated the law, and without confusion.''

No Illinois case has been cited and we have been
unable to find one wherein the facts are so nearly com-

parable with the facts in the instant case as are the facts in the foregoing case. We deem it unnecessary to analyze and discuss the *Burger* case in detail since the reading of same demonstrates its applicability. We have quoted extensively from that case because we think the reasoning of the court and its conclusions therein completely answer every question raised by the defendants in the case at bar.

In *Lucas v. Marquette City & Presque Isle Ry. Co.*, 136 Mich. 142, the car on which plaintiff therein was riding stopped at the regular stopping place. He was the last to leave from the rear platform and stood with one foot on the lower step ready to alight when the car started and he was thrown to the ground and injured. He fell from the car 75 feet from the stopping place. He testified that he held onto the rail with one hand and had his dinner pail in the other. On appeal from a judgment for the plaintiff in that case the Supreme Court of Michigan said at p. 143:

"The fact that plaintiff fell 75 feet from the stopping place is not conclusive that he jumped from the car. There is evidence that he had hold of the rail with his left hand, and, with his dinner pail in his right, stood with one foot on the lower step, in the act of alighting, and that he held on for a while after the car started. The question was clearly one for the jury."

Defendants cite numerous authorities in support of their contention that plaintiff was guilty of contributory negligence as a matter of law. The only case cited where the facts are at all similar to the facts herein is *Phillips v. Rensselaer & Saratoga R. Co.*, 49 N. Y. 177. In that case a train of cars slowed down and had about stopped when the plaintiff therein and others started to board various cars of the train. Plaintiff got his foot on the step of one of the cars but because of two men who got on ahead of him he was unable to get any further than the lower step. The

cars were then jerked ahead and the plaintiff was jerked off the step but he did not let go of the handle. He ran alongside of the car and succeeded in getting on the step a second time but he had no more than done so when he was knocked off by a platform which stood close to the track about 60 feet from the point where he first attempted to get on. The train was going "very slow" when plaintiff first got on the step but by the time he got on the second time it was going at "a pretty good speed." There the court held that plaintiff was guilty of contributory negligence as a matter of law on his own evidence that when he originally attempted to board the car it was in motion. That case is not applicable to the situation presented here. In the *Phillips* case the court also apparently assumed that when the feet of the plaintiff therein were first jerked off the step of the car, he could have let go of the handle without being injured, since it stated at p. 180 that "unless evidence was given tending to prove facts explaining and justifying this conduct of the plaintiff, the nonsuit was proper." In the case at bar there was evidence which tended to prove facts explaining and justifying plaintiff's conduct.

We are impelled to hold that upon the only evidence which the trial court was permitted to consider in passing upon defendants' motion for judgment notwithstanding the verdict, said judgment was erroneously entered. Plaintiff made out a prima facie case that he was in the exercise of ordinary care for his own safety; that defendants were negligent in the operation of their streetcar and that their negligence was the proximate cause of his injury. Since there was evidence which showed or tended to show that plaintiff was not guilty of contributory negligence and that defendants were guilty of negligence, which was the proximate cause of plaintiff's injuries, neither of these questions could be properly decided by the trial court

as a matter of law but both were questions of fact for the determination of the jury.

The judgment of the superior court of Cook county is reversed and the cause is remanded for the disposition of defendants' motion for a new trial and for such further proceedings as are not inconsistent with the views herein expressed.

*Judgment reversed and cause remanded.*

FRIEND and SCANLAN, JJ., concur.