ARTHUR L. LORING, Plaintiff-Appellant, *v.* YELLOW CAB COMPANY *et al.*, Defendants-Appellees.

.(No. 61689;

First District (4th Division)—October 22, 1975.·

Philip H. Corboy and Associates, of Chicago (Philip H. Corboy and Patrick J. Kenneally, of counsel), for appellant.

Jesmer and Harris, of Chicago (Julius Jesmer and Charles E. Tannen, of counsel), for appellees.

Mr. JUSTICE JOHNSON delivered the opinion of the court:

Plaintiff was injured as a result of the alleged negligence of the defendants in the operation of their taxicab. A jury trial was held and, at the close of plaintiff's evidence, the court granted a motion for a directed

verdict on behalf of the defendants. Judgment was entered on the verdict and this appeal was taken therefrom.

The only issue presented for our review is whether the trial court erred in directing a verdict in favor of the defendants on the grounds that plaintiff was guilty of contributory negligence or, in the alternative, that plaintiff failed to show a breach of a duty on the part of the defendants to exercise the highest degree of care.

The evidence adduced at trial may be summarized as follows. On the date of the occurrence, plaintiff was an 82-year-old medical doctor-attorney who resided at 1426 North State Parkway in Chicago, Illinois. He had practiced law for some 60 years and still maintained office space at 10 South LaSalle Street in Chicago. For several years, it had been the practice of the plaintiff and a neighbor, Mr. Norton Smith, to share a taxicab as transportation to work each morning.

The plaintiff and Mr. Smith were picked up by a taxicab in front of their respective homes at about 8:30 a.m. on January 26, 1973. The cab was owned by the Yellow Cab Company and driven by one of their employees, Dominic Ricardo, who, according to Mr. Smith, had driven him and the plaintiff on several previous occasions. Mr. Smith, seated in the rear directly behind the driver, was already in the taxicab when the plaintiff came out. Plaintiff sat in the rear seat directly behind the passenger side. The cab arrived at 10 South LaSalle Street facing in a southerly direction and, because of parked vehicles at the curb, stopped in a double-parked position in front of the building. The plaintiff then proceeded to alight from the rear door of the cab on the passenger side.

According to the testimony of Norton Smith, who remained in the taxicab as plaintiff alighted, plaintiff was about a truck-width away from the curb as he stepped onto LaSalle Street. Mr. Smith stated that plaintiff took the outside door handle in his right hand and shut the door. Then the cab started very quickly, and Smith saw the plaintiff's face through the rear window. Smith believed that the plaintiff's right hand was still on the door handle when the cab started a few seconds after plaintiff alighted. The cab moved 6 to 10 feet between starting and stopping. Smith further testified that the plaintiff was visibly slow in his physical movements.

On cross-examination, Mr. Smith stated that he gave directions as to his intended destination while plaintiff was alighting from the cab. The condition of the street was dry on the date of the occurrence. Smith testified, on redirect examination, that the cab started up almost immediately, and that there was no obstruction in the cab which would have prevented the driver from seeing the plaintiff, had he looked.

Mr. Louis J. Schwartz, an employee of the Schwartz Pickle Company

at 180 North Loomis in Chicago, was called as a witness on behalf of the plaintiff. The witness testified that at or about 8:30 a.m. on January 26, 1973, he made a delivery to a restaurant located in the 10 South LaSalle Street building in the course of his employment. After completing his delivery, Mr. Schwartz came out of the LaSalle Street entrance and noticed an older gentleman stepping out of a taxicab. Mr. Schwartz stated that he had a clear view of the occurrence and remembered that the plaintiff was wearing a top coat. As the plaintiff closed the door, the cab pulled off while the plaintiff still had his hand on the door handle. Plaintiff fell as the cab pulled off and was dragged down the street. Schwartz did not know the plaintiff prior to the occurrence and had not become a social or business acquaintance of his since the date in question.

Mr. Schwartz testified on cross-examination that the occurrence was within his vision, that he saw plaintiff's hand on the right rear handle of the taxicab and his body near the cab, and that he heard the door as it closed. The plaintiff's hand remained on the door handle as the cab took off. The witness further stated that the only time he saw the plaintiff between the occurrence and trial was when plaintiff came to his office some 11 months after the occurrence and asked him to give a statement.

Arthur Loring, the plaintiff, testified that he received his law degree from Chicago Kent College of Law in 1911 and a medical degree in 1926. He had lived at 1426 North State Parkway in Chicago for 35 years and had practiced law at 10 South LaSalle Street for almost 40 years. The plaintiff testified that on the date of the occurrence, he followed his common practice of sharing a taxicab to work with his neighbor and friend, Norton Smith. The cab arrived in front of his home at about 8:30 a.m. with Mr. Smith already in it. Loring entered and sat in the right rear seat, and Smith directed the driver to go to plaintiff's office at 10 South LaSalle. The cab double-parked in front of that building, and plaintiff managed, with difficulty, to get the door open. Plaintiff got out and proceeded to close the door when suddenly, accordingly to plaintiff, the taxicab started up. The next thing he remembered after the cab pulled away was waking up in the hospital.

On cross-examination, the plaintiff testified that he had to clear himself from between the door and the cab in order to close the door. He was facing east when he closed the door by holding onto the door handle. Plaintiff stated that he asked the driver to help him with the door before he got out because he was having difficulty with it, but the driver did nothing. His hands were functional enough to grasp the handle of the taxicab door to close it. Further, plaintiff testified that the taxicab did not move until after he slammed the door. He had his hand on the

handle from the time he closed the door until the cab started to move.

After the close of plaintiff's evidence, the trial court directed a verdict in favor of the defendants. It ruled that the plaintiff was guilty of contributory negligence as a matter of law or, alternatively, that plaintiff failed to prove that the defendant breached its duty to exercise the highest degree of care. The trial court, as the basis for its ruling, found that plaintiff did close the door after alighting from the taxicab and that the only reason the accident occurred was that he failed to let go of the door handle. The court expressly stated that its ruling was not based upon a finding that the relationship of passenger-carrier had terminated at the time of the occurrence.

We have fully examined the record of proceedings in this case and considered the question before us in light of the rule set forth in *Pedrick v. Peoria & Eastern R.R. Co.* (1967), 37 Ill.2d 494, 229 N.E.2d 504, which states:

> "* * * verdicts ought to be directed and judgments *n.o.v.* entered only in those cases in which all of the evidence, when viewed in its aspect most favorable to the opponent, so overwhelmingly favors movant that no contrary verdict based on that evidence could ever stand." (37 Ill.2d 494, 510.)

In our judgment, the undisputed evidence adduced during the trial of this case fails to meet the criteria of the *Pedrick* rule.

■■ A common carrier must exercise with regard to its passengers the highest degree of care consistent with its mode of conveyance and practical operation. (*Nilsson v. Checker Taxi Co.* (1972), 4 Ill.App.3d 718, 281 N.E.2d 721; *Holderness v. Checker Taxi Co.* (1969), 105 Ill.App.2d 251, 245 N.E.2d 32.) Moreover, the passenger-carrier relationship is not terminated until the passenger, in reasonable exercise of ordinary care for his own safety, has had a reasonable opportunity to reach a place of safety. *Rotheli v. Chicago Transit Authority* (1955), 7 Ill.2d 172, 130 N.E.2d 172; *Shanowat v. Checker Taxi Co.* (1964), 48 Ill.App.2d 81, 198 N.E.2d 573.

■■ The evidence in this case shows that plaintiff had alighted from the taxicab and closed the door prior to the accident. However, there was also uncontradicted testimony that plaintiff, a man in his eighties whose physical movements were visibly slow, had not yet released the door handle and moved clear of the cab, that the cab pulled away almost immediately after the door was closed, that there was nothing to prevent the cab driver from looking to see the plaintiff as he alighted in order to determine if it was safe to move the cab. Further, plaintiff testified that he requested assistance with the door from the driver, thus putting him on notice that there may be difficulty in alighting. These undisputed

facts, in our opinion, created questions of fact as to plaintiff's contributory negligence and defendants' breach of the highest duty of care which should have been determined by the jury.

■■ In *Shanowat v. Checker Taxi Co.* (1964), 48 Ill.App.2d 81, 198 N.E.2d 573, Mrs. Shanowat together with her two daughters aged 11 and 9, her 14-year-old son, and a 17-year-old niece, were passengers in defendant's taxicab. Their intended destination was a private residence located on the west side of a north-south street. The cab stopped across the street from the house and double-parked in the northbound lane. The two daughters got out of the right rear door and, while Mrs. Shanowat searched her purse for the fare, the girls were struck by a northbound vehicle as they came out from in front of the cab. We affirmed the judgment against the defendant and, referring to 6 Ill. L. & Pr. *Carriers* § 520, at 727-28 (1954), stated:

> "Where the passenger alleges that he was injured after alighting from the conveyance, it is within the province of the jury to determine issues of fact with respect to the carriers' negligence in failing to provide a safe place for the passenger to alight, its negligence in setting down the passenger at an improper place * * * and other issues of fact with respect to its liability. 6 ILP, Carriers, § 520, pp 727-28." (48 Ill.App.2d 81, 86-87.)

To the same effect see also *Lewis v. Checker Taxi Co.* (1951), 345 Ill. App. 301, 103 N.E.2d 192 (abstract opinion); *Jacobsen v. Cummings* (1943), 318 Ill.App. 464, 48 N.E.2d 603; *Paris v. East St. Louis Ry. Co.* (1934), 275 Ill.App. 241.

The defendant in *Shanowat* also argued that plaintiffs' recovery was unjustified, as a matter of law, due to the contributory negligence of both the children and their mother. We referred to the case of *Sphatt v. Tulley* (1962), 38 Ill.App.2d 229, 186 N.E.2d 670, as follows:

> " '* * * contributory negligence on the part of a plaintiff is a matter of fact for the jury to determine unless the question has become one of law, in that all reasonable minds would reach the conclusion that there was contributory negligence. Bunton v. Illinois Cent. R. Co., 15 IllApp2d 311, 146 NE2d 205; Thomas, v. Buchanan, 357 Ill 270, 192 NE 215; Geraghty v. Burr Oak Lanes, Inc., 5 Ill2d 153, 125 NE2d 47.' " (48 Ill.App.2d 81, 89.)

We do not believe that all reasonable minds would conclude from the facts presented by plaintiff in this case that he was guilty of contributory negligence and, therefore, hold that this issue should have been determined by the jury.

■■ To support its position that plaintiff was guilty of contributory negligence as a matter of law, the defendant cites four cases (*Talbott v.*

*Yellow Cab Co.* (D.C. App. 1956), 121 A.2d 262; *Swank v. Jordan* (La. App. 1954), 71 So.2d 636; *Grossman v. Wolkowitz* (1965), 270 Minn. 142, 132 N.W. 2d 800; and *Dyer v. Heatwole* (1961), 225 Md. 507, 171 A.2d 241) from other jurisdictions which had no direct bearing on the governing law in Illinois on this issue. The Illinois cases on which defendant relies are factually distinguishable inasmuch as they involve situations where the plaintiff alone was totally in control of the instrumentality causing the injury: in *Francis v. Francis* (1973), 9 Ill.App.3d 90, 291 N.E.2d 857, plaintiff was injured when he put his hand into a running corn picker; in *Reid v. Employers Mutual Liability Insurance Co.* (1973), 14 Ill.App.3d 174, 302 N.E.2d 108, plaintiff's injury occurred when his hand was caught between two brass rollers of a printing press he was cleaning; and, in *Mundt v. Ragnar Benson, Inc.* (1974), 18 Ill.App.3d 758, 310 N.E.2d 633, plaintiff fell into a hole as he hoisted plywood up almost as high as his head. By contrast, in the case at bar, the defendant, charged with exercising the highest degree of care toward its passengers, was in control of the instrumentality which caused the plaintiff's injury.

For the foregoing reasons, the judgment of the circuit court of Cook County is reversed and the cause is remanded for a new trial.

Reversed and remanded.

DIERINGER, P. J., and ADESKO, J., concur.