ROSALIE BORUS, Plaintiff-Appellant, *v.* YELLOW CAB CO. *et al.*, Defendants-Appellees.

First District (4th Division)   No. 62800

Opinion filed August 18, 1977.

Arnstein, Gluck, Weitzenfeld & Minow, of Chicago (Eugene J. Kelley, Jr., of counsel), for appellant.

Jesmer and Harris, of Chicago (Francis X. Riley, of counsel), for appellees.

Mr. JUSTICE ROMITI delivered the opinion of the court:

The basic issue in this case is whether the plaintiff's inadvertent closing of a taxicab door on her coat can be held to be contributory negligence as a matter of law thus barring her suit against the defendants for injuries suffered when she allegedly was dragged some distance by the defendants' taxi. We hold that, particularly under the facts of this case, the question is one for jury determination and reverse the trial court's entry of summary judgment for the defendants on this issue. We also hold that there is no such fatal contradiction between the plaintiff's deposition and her affidavit as to make the latter improper.

On June 29, 1972, the plaintiff was injured on Jackson Boulevard near the School of the Art Institute of Chicago. Subsequently she filed suit against Thomas Jamison, a taxicab driver, and Yellow Cab Company, his employer, alleging that due to the driver's negligence she was dragged by the cab when her coat was caught in the door. Shortly before trial the defendants filed a motion for summary judgment which was granted on the grounds that the plaintiff was guilty of contributory negligence as a matter of law and that such negligence was the proximate cause of her injury. The depositions of both the plaintiff and the driver and the plaintiff's affidavit comprise the only evidence before the trial court and before this court.

According to the plaintiff's deposition she was approximately 59 years of age at the time of the accident. About four years before she suffered a serious accident, breaking her hip, pelvis and a number of ribs. At the time of the instant accident she still had to use a cane and was very slow in her movements. Because of her condition, she used cabs whenever she went more than a block or so.

On this particular day she was going to the School of the Art Institute. When she got in the taxi, she instructed the driver where to go. He stopped where she told him to stop. In response to the question "How close to the curb did he come? Did he come right up close or did he stop away from the curb?" she said "I'm not sure. I have no idea." However, a few minutes later, at defense counsel's request, she marked with an "x" on a photograph of Jackson Boulevard the place where she alighted. Defense counsel states that the "x" shows she alighted in the street more than two feet from the curb.

The plaintiff paid the fare while still in the cab. Because of her physical condition it took her some time to get out; the driver did not help her with the door. She had to use the cane, which was in her right hand and hold on to the taxi with her left hand to get out. She alighted in the street, Jackson Boulevard. Once she alighted, she turned facing the cab and slammed the

door shut. Unknown to her, her raincoat caught in the door. The driver took off, going west on Jackson, the moment the door slammed. She cried out and after she was dragged in the street for some distance, the driver heard her, stopped the taxi and took her to a hospital.

The plaintiff's affidavit adopted the deposition and photograph but added, in summary, the following facts:

At the time of the instant accident, she was still partially disabled. It took her between twenty and thirty seconds to get into the taxicab. The driver watched her during this time. When the taxi reached her destination it stopped, facing west on Jackson Boulevard. While she was in the taxi she did not notice exactly how far the cab was from the curb. However when she did alight, she found herself standing in a less than two foot space between the side of the taxi and the curb. This, according to the plaintiff, left her in an unusually awkward position. She was forced to stand closer to the taxi when she closed the door than she normally would have. On the other hand, the position of the cab and the open door prevented her from stepping comfortably up onto the curb. She did not know how she could have gotten up onto the curb without first closing the door. It seemed that the least awkward thing to do was to attempt to close the door so she could get out of the way and up onto the curb. When she closed the door she was standing no less than six inches away from the side of the taxicab. She had no idea before she closed the door that her coat was in the path of the swinging door or that there was any likelihood that the coat would be caught in the door. Immediately after she closed the door, and before she had a chance to get out of the street or up onto the sidewalk, the driver took off. She had no opportunity or time to free herself from the taxi.

The defendants, although given the opportunity, made no motion to strike the plaintiff's affidavit, nor did they file an affidavit in response.

It would almost appear from the driver's deposition that the accident really did not happen: He let the plaintiff off, not in the street but on the sidewalk. After closing the door she walked north toward the Art Institute. He did not start the taxi until she was about three feet away from it. After he started the taxi, he travelled about five feet and then stopped because he heard a girl (not the plaintiff) yell "wait." The girl pointed to the curb side of the taxi so he got out and found the plaintiff. She was lying about a foot away from the taxi. He did not see her coat or any article of her clothing attached to the cab.

According to the driver, he had first noticed the plaintiff's cane when she hailed the taxi. When getting in the cab, she was slow and awkward. She spoke as befitted an elderly, frail lady.

The driver had received two hours of instruction from the taxicab company. He had received no instructions on the handling of disabled

passengers, or on determining when a discharged passenger is sufficiently far from the taxi to insure that there is no danger of the passenger being caught up in the taxi. He refused to answer questions as to the number of prior accidents he had had and whether he had been advised that the company would not tolerate repeated involvement in accidents.

■■ The trial court in rendering summary judgment for the defendants found (1) that the plaintiff unknowingly closed the door on her coat; (2) that she was dragged some distance because the coat was caught in the door, and (3) that she yelled and the driver stopped the cab immediately.[1] The court then found, having accepted the plaintiff's version of the facts, that she was guilty of contributory negligence as a matter of law and that such negligence was the proximate cause of her injury.

## I.

■■ The remedy of summary judgment is to be awarded with caution so as not to preempt the right of a trial by jury or the right to present fully a factual basis for a claim where a material dispute may exist. Even if there is no dispute in the evidence, if fair-minded persons would draw different conclusions from the evidence, then it becomes the province of the jury to draw that conclusion which to them seems most reasonable. (*Silberstein v. Peoria Town & Country Bowl, Inc.* (1970), 120 Ill. App. 2d 290, 257 N.E.2d 12.) Furthermore, the issue of contributory negligence is ordinarily and preeminently a question of fact for the jury, not the court to decide. (*Kahn v. James Burton Co.* (1955), 5 Ill. 2d 614, 126 N.E.2d 836; *Ballard v. Jones* (1974), 21 Ill. App. 3d 496, 316 N.E.2d 281, *appeal denied* (1975), 57 Ill. 2d 604; *Genck v. McGeath* (1956), 9 Ill. App. 2d 145, 132 N.E.2d 437; *Rowley v. Rust* (1940), 304 Ill. App. 364, 26 N.E.2d 520; 28 Ill. L. & Practice *Negligence* §268 (1957); Prosser on Torts 420 (4th ed. 1971); Note, *Torts—DeFacto Abandonment of Contributory Negligence*, 25 Ark. L. Rev. 559, 560-61 (1972); Walker, *Defenses to Liability in Automobile Cases*, 1953 U. Ill. L. F. 52, wherein it is stated at page 64 "Most courts, acting in accordance with well-settled law, refuse to become a 'thirteenth juror' or substitute their judgment for that of the jury.") As stated in *Goman v. Benedik* (1962), 253 Iowa 719, 721, 113 N.W.2d 738, 739:

> "It is not disputed by appellant, that we must view the evidence in the light most favorable to plaintiff; that it is only the exceptional case in which the issue of freedom from contributory negligence should not be submitted to the jury—only where such negligence is so palpable, flagrant and manifest that reasonable minds may fairly

---

[1] While it is not material to our decision, we note that the first two issues were seriously in dispute and thus for a jury to determine, and that the third finding is supported by no evidence in the record. The driver said he did not hear her. The plaintiff said he stopped immediately once he heard her, but he did not hear her immediately.

reach no other conclusion; that if there is any evidence tending to establish plaintiff's freedom from contributory negligence, the question is one of fact for the jury and doubts should be resolved in favor of such submission."

The reason for this is obvious when one bears in mind that whether ordinary care has been exercised or not depends on the circumstances of each particular case. (*Bickel v. City of Chicago* (1975), 25 Ill. App. 3d 684, 323 N.E.2d 832; *Genck v. McGeath* (1956), 9 Ill. App. 2d 145, 132 N.E.2d 437; *Minters v. Mid-City Management Corp.* (1947), 331 Ill. App. 64, 72 N.E.2d 729; 28 Ill. L. & Prac. *Negligence* §123 (1957)), and the courts therefore are reluctant to lay down general rules on what constitutes contributory negligence. (*Rowley v. Rust* (1940), 304 Ill. App. 364, 26 N.E.2d 520.) As stated in *Pienta v. Chicago City Ry. Co.* (1918), 284 Ill. 246, 251-52, 120 N.E. 1, 3:

"While the burden of proof is always on the plaintiff, in proceedings of this kind, to show that when the injury was received he was in the exercise of ordinary care, that question is one of fact, which must be determined by the circumstances attending and surrounding the injury. Whether the evidence tends to prove such care is a question of law. A court can only determine adversely to the plaintiff when no other conclusion can be reasonably drawn from the uncontradicted facts and from the evidence that is favorable to the plaintiff. 'There is no rule of law which prescribes any particular act to be done or omitted by a person who finds himself in a place of danger. In the variety of circumstances which constantly arise it is impossible to announce such a rule. The only requirement of the law is that the conduct of the person involved shall be consistent with what a man of ordinary prudence would do under like circumstances.' "

■■ We are aware that certain cases cited by the defendant, *Dyer v. Heatwole* (1960), 225 Md. 507, 171 A.2d 241; *Grossman v. Wolkowitz* (1965), 270 Minn. 142, 132 N.W.2d 800; *Swank v. Jordan* (La. App. 1954), 71 So. 2d 636, and *Talbott v. Yellow Cab Co.* (D. C. App. 1956), 121 A.2d 262 (the only case involving a taxicab), did find contributory negligence as a matter of law where the plaintiff's coat was caught in the door of the defendant's automobile. But as this court noted in *Loring v. Yellow Cab Co.* (1975), 33 Ill. App. 3d 154, 337 N.E.2d 428, those cases are from other jurisdictions and have no direct bearing on the governing law in Illinois. We found those cases unconvincing then and we find them unconvincing now. While there might be a situation where a plaintiff closing a car door on his or her coat would be guilty of contributory negligence as a matter of law, we can envision many situations where such a plaintiff would not be. Certainly in this case, a jury could reasonably determine that the

plaintiff was not guilty of contributory negligence for one or more of the following reasons:

■■ 1. The defendant was a common carrier and owed the plaintiff the highest degree of care consistent with its mode of conveyance and practical operations. (*Loring v. Yellow Cab Co.* (1975), 33 Ill. App. 3d 154, 337 N.E.2d 428; *Nilsson v. Checker Taxi Co.* (1972), 4 Ill. App. 3d 718, 281 N.E.2d 721, *appeal denied*, (1972), 52 Ill. 2d 595. The carrier has a duty of furnishing a reasonably safe place for passengers to alight (*DeBello v. Checker Taxi Co., Inc.* (1972), 8 Ill. App. 3d 401, 290 N.E.2d 367), and the duty of care is not terminated until the passenger, in reasonable exercise of ordinary care for his own safety, has had a reasonable opportunity to reach a place of safety (which the middle of the street is not!). (*Loring v. Yellow Cab Co.* (1975), 33 Ill. App. 3d 154, 337 N.E.2d 428, *Shanowat v. Checker Taxi Co.* (1964), 48 Ill. App. 2d 81, 198 N.E.2d 573.) Furthermore, a common carrier has a special duty to its passengers to take reasonable action to protect them against unreasonable risk of physical harm. (2 Restatement (Second) of Torts §314A(1)(a) (1965).) The jury might find that the plaintiff was justified in assuming that the defendant would not endanger her safety by starting off before she had walked away from the taxicab and reached a place of safety. Thus they might find, particularly in the light of the other circumstances we will discuss, that the plaintiff was not negligent in failing to concern herself with the position of her coat at the same moment she was attempting to leave the taxi and close its door and thus in failing to observe, before the door was closed, that the coat was in such a position it might be caught in the door. (We note that while the defendants in their brief repeatedly say the plaintiff "put" the coat in the door, this contention is absurd. There is absolutely no evidence to show that the act was anything more than inadvertent, whether caused by the motion of the plaintiff's arm, the cane, the nature of the coat, the weather, the position of the taxi or what, we do not know.) Moreover it must be kept in mind that the test is what a person of ordinary prudence would have done or omitted to do in the particular instance (*Chicago & Alton R.R. Co. v. Anderson* (1894), 55 Ill. App. 649; *Wills v. Paul* (1960), 24 Ill. App. 2d 417, 164 N.E.2d 631), and the exercise of ordinary care on the part of the plaintiff does not in every case exclude slight negligence on his or her part. *Malott v. Schlosser* (1905), 119 Ill. App. 259; *Chicago, Rock Island & Pacific Ry. Co. v. Koehler* (1892), 47 Ill. App. 147.

■■ 2. The jury may find that the plaintiff was forced to alight in an unsafe place (a street despite the defendant's contentions to the contrary cannot be considered safe), and that being placed in a position of real or apparent danger, she acted reasonably under the circumstances. A person suddenly placed in a position of real or apparent danger is not required to

exercise the same degree of care for his or her safety as would be required if he or she had ample opportunity to make a considered judgment. (28 Ill. L. & Prac. *Negligence* §§127, 128 (1957).) The defendants have argued on appeal that in fact there was no danger, that the street was traffic-free (this would appear to be contradicted by their own photograph) and that the plaintiff could have safely left by walking east to the driveway leaving the door open. In making these arguments the defendants are apparently confusing us with the jury. The defendants also apparently contend that because the driver stopped "exactly" where she told him to, she was responsible for the situation. But a jury could reasonably conclude that when a driver is told to "stop here," one does not expect him to stop in the middle of the street.

■■■ The jury could find that the plaintiff in the light of her physical handicaps, if in fact she was handicapped as she alleges, was not negligent in failing to prevent her coat from being caught in the door. If the actor is ill, or otherwise physically disabled, the standard of conduct to which the actor must conform to avoid being negligent is that of a reasonable person under like disability. (2 Restatement (Second) of Torts §283C (1965).) The jury in this case may find that the plaintiff because of her prior injuries, was handicapped, slow and awkward. If it does so find, it might then conclude that in view of this handicap, and her need to use a cane, her conduct conformed to that of the reasonable handicapped person. The defendant in this case certainly cannot even complain that he was unaware of the plaintiff's condition[2] since he had ample opportunity to observe her when she entered the taxi.

Nearly the same question was before the court in the recent case of *Loring v. Yellow Cab Co.* (1975), 33 Ill. App. 3d 154, 337 N.E.2d 428. We find that case persuasive. In *Loring*, the plaintiff, an 82-year-old doctor habitually rode to work with a neighbor, in a taxi. This particular morning, when the taxi arrived at its destination (10 South La Salle Street) it double-parked. Thus when the plaintiff alighted, he was about a truck width away from the curb. The plaintiff's movements were visibly slow. Indeed, he had, unsuccessfully, asked the driver to help him with the door. The plaintiff slammed the door but failed to let go of the door handle. The cab driver could have seen the plaintiff if he had looked. Instead the cab pulled off and the plaintiff was dragged down the street. The court directed a verdict for the defendant, ruling that the plaintiff was guilty of contributory negligence as a matter of law, or, in the alternative, that the defendant did not breach any duty towards the

---

[2] Ignorance of the condition would not of course be a defense. The degree of care required of a physically disabled person is not increased by the fact that another person was ignorant of the handicap, although in some situations it might be reduced where the other party was aware of the handicap.

plaintiff. It found that the only reason the accident happened was that the plaintiff failed to let go of the door handle. We reversed, holding that the case should have gone to the jury. We noted in that case that the Illinois cases on which the defendant relied (as it does here), *Francis v. Francis* (1973), 9 Ill. App. 3d 90, 291 N.E.2d 857, *appeal denied*, 53 Ill. 2d 608; *Reid v. Employers Mutual Liability Insurance Co.* (1973), 14 Ill. App. 3d 174, 302 N.E.2d 108, *aff'd* (1974), 59 Ill. 2d 194, 319 N.E.2d 469; *Mundt v. Ragnar Benson, Inc.* (1974), 18 Ill. App. 3d 758, 310 N.E.2d 633, *aff'd* (1975), 61 Ill. 2d 151, 335 N.E.2d 10, were all factually distinguishable as they involved situations where the plaintiff *alone* was *totally* in control of the instrumentality causing the injury whereas in *Loring*, the defendant, charged with exercising the highest degree of care toward its passengers, was in control of the instrumentality which caused the plaintiff's injury.

As in *Loring*, the driver of the taxi here stopped not at the curb but out in the street. As in *Loring*, the plaintiff allegedly suffered from a handicap (there age, here the prior injury) which hindered her in getting out of the taxi safely. While in this case the plaintiff may not have requested assistance, the driver was aware of her condition, describing her as an elderly, frail woman. She seemed to be awkward. Thus he had noticed there might be difficulty in alighting. As in *Loring* he could have looked to see if she had moved away from the taxi but did not do so. And as in *Loring*, the defendant, charged with exercising the highest degree of care towards its passengers, was in control of the instrumentality which caused the plaintiff's injury.

## II.

The defendants also contend that the plaintiff's affidavit was improper since it contradicted statements in her deposition. First, this contention is not properly before this court since no objection was made either by motion to strike, or otherwise, in the trial court. (*Fooden v. Board of Governors* (1971), 48 Ill. 2d 580, 272 N.E.2d 497, *cert. denied* (1972), 408 U.S. 943, 33 L. Ed. 2d 766, 92 S. Ct. 2847.) Second, we have carefully examined both the deposition and the affidavit and have been able to find no real contradiction. While it is true that at one point in her deposition the plaintiff said she did not know where the taxi stopped, it is obvious that she was confused by the multiple nature of the question and was only answering the first query "how close to the curb did he come?" since a few minutes later she marked the spot on the map. A witness' uncertainty as to precise distances is not such a fatal discrepancy as to warrant directing a verdict; and, equally, the difference between the 1½ feet mentioned in the affidavit and the two feet which the defendant claims is shown by the photograph do not amount to a fatal contradiction. Nor is it so clear from the photograph that the spot marked is two feet

rather than 1½ feet from the curb. In fact the affidavit does not contradict the deposition; it merely supplements it. This an affidavit may properly do even when the other party has moved for summary judgment based on the deposition alone. *Oglesbee v. Nathan* (1973), 14 Ill. App. 3d 609, 302 N.E.2d 483.

Accordingly, since we find that under the evidence presented the jury could determine in the light of the duty owed by the defendants to the plaintiff, or in the light of the unsafe place in which the plaintiff was allegedly forced to alight and the apparent danger in which she allegedly was placed, or in light of her alleged physical condition, that the plaintiff was not contributorily negligent, we reverse the summary judgment for the defendants and remand the case for trial.

Reversed and remanded.

DIERINGER, P. J., and JOHNSON, J., concur.