(No. 33127.—

VERA SIMS, Appellant, *vs.* CHICAGO TRANSIT AUTHORITY, Appellee.

*Opinion filed Sept. 23, 1954—Rehearing denied November 15, 1954.*

Bruce Parkhill, and Wolff, Kean & Gomberg, both of Chicago, for appellant.

Thomas C. Strachan, Jr., James O. Dwight, Marion J. Hannigan, Arthur J. Donovan, and John W. Freels, all of Chicago, for appellee.

Mr. Chief Justice Bristow delivered the opinion of the court:

In a proceeding for damages for personal injuries sustained by plaintiff, Vera Sims, when she was struck by a streetcar, the circuit court of Cook County entered a judgment on a jury verdict in favor of plaintiff in the amount of $25,000, which the Appellate Court reversed, and entered judgment notwithstanding the verdict for defendant Chicago Transit Authority. This court has allowed plaintiff's petition for leave to appeal therefrom, and the cause

presents the single question of law of whether the judgment notwithstanding the verdict was proper.

In adjudging the propriety of that judgment, it is the duty of this court to examine the record and determine whether there is any evidence, which, taken with its intendments most favorable to the plaintiff, tends to prove the essential elements of the complaint. *Seeds* v. *Chicago Transit Authority*, 409 Ill. 566, 571; *Mirich* v. *Forschner Contracting Co.* 312 Ill. 343, 355.

From the record it appears that plaintiff adduced evidence that at 4 P.M. on August 1, 1947, she was riding as a passenger on defendant's southbound streetcar, which fact defendant disputes, apparently en route to her work at a restaurant located at the southeast corner of Clark and Superior street, in the city of Chicago. Ordinarily defendant's streetcars do not stop at Superior Street, which lies between Chicago Avenue and Huron Street, where stops are regularly made. It was therefore customary for plaintiff to alight at Huron Street and walk back one block north to her place of employment. At the time of the alleged accident, however, about 15 of defendant's southbound cars, including the one in which plaintiff was riding, were blocked from a point 100 feet south of Superior Street, where there had been an accident, to about a third of a block north of Superior Street. That line of standing streetcars obstructed the north and south crosswalks at Clark and Superior streets, where there was only a narrow passage in the middle of the intersection through which east and west vehicular and pedestrian traffic could move. However, the southbound automotive traffic adjacent to defendant's streetcars moved freely, according to the testimony of plaintiff's witnesses.

The streetcar in which plaintiff had been riding discharged the passengers and permitted plaintiff to alight at about one third of a block north of Superior Street. Plaintiff left the car at the front and proceeded to walk

between it and the streetcar ahead in order to cross to the east side of the street. The evidence is conflicting as to how far plaintiff proceeded before she was struck by one of defendant's northbound cars.

Although plaintiff was unable to testify as a result of her brain injuries sustained in the accident, witnesses on her behalf testified that she stopped directly in front of the southbound car from which she alighted. The distance between the two modern streetcars as they pass was at most 12 inches, and according to the evidence adduced by plaintiff the northbound car approached at a speed of 20 miles an hour without giving any warning signals. When plaintiff saw the car descending upon her, she threw up her hands and screamed. As she did so, she was struck on the wrist by the projecting ventilator of the northbound car with such force that her wrist and the steel ventilator were both broken, and she was knocked to the ground. As she fell she struck her head against the bumper of the southbound car on which she had been a passenger, and it is uncontroverted that her body came to rest in front of that southbound car and between the southbound rails. She sustained a skull fracture and certain brain injuries.

Defendant offered testimony that plaintiff had proceeded heedlessly east of the southbound car and was between the two sets of tracks when she was struck; that the speed of the northbound car was about 6 to 10 miles an hour; and that proper signals were given by the operators of the car.

On the basis of substantially the foregoing evidence the jury returned a verdict for plaintiff in the amount of $25,000, upon which the circuit court entered the judgment which the Appellate Court reversed.

On this appeal plaintiff contends that the Appellate Court improvidently considered the evidence offered by defendant, the inferences therefrom, as well as inferences dehors any evidence in determining that the judgment not-

withstanding the verdict should be entered; and that the evidence offered by plaintiff established that she was in the exercise of due care at the time of the accident which was proximately caused by defendant's breach of its duty of highest care owed her as a passenger. Defendant, however, contends that even though the Appellate Court may have purported to consider all the evidence, nevertheless, its decision in defendant's favor was predicated on the ground that plaintiff was contributorily negligent as a matter of law, and that no evidence of defendant's negligence was adduced.

In determining whether there is any evidence fairly tending to establish that defendant was negligent, the record shows that plaintiff had been a passenger on defendant's streetcar. This status has been deemed to continue and to exact from the car company the highest degree of care until the passenger is furnished with a safe place to alight. (*Pennsylvania Co. v. McCaffrey,* 173 Ill. 169.) However, after a passenger has safely alighted, the company owes only a duty of ordinary care. (*Davis v. Southside Elevated Railroad,* 292 Ill. 378.) Courts are not in harmony in determining when the status of passenger ceases, and the cases have been reconciled according to the rationale that the degree of care imposed diminishes as the danger involved in the situation lessens.

In the *Davis case,* relied upon by defendant, a discharged passenger fell on a banana peel on the stairway leading from an elevated station, and the court held that there was only a duty of ordinary care which was not breached since defendant had no notice of the condition. The court explained that in the cases where the highest degree of care was imposed the accident happened in boarding or alighting from cars, or in the course of their moving, where the hazards are great, but that by the weight of authority the same degree of care is not required as to the

stations and approaches to and from such cars, since the danger incurred in such surroundings is not as great.

The court, however, cited and distinguished the case of *Chicago Terminal Transfer Co. v. Schmelling,* 197 Ill. 619, relied upon by plaintiff herein, where the railroad had not provided a platform at the regular train stop, and the court held that the relation between a passenger and a railroad does not terminate until the passenger has alighted from the train and left the place where passengers are discharged, and that it was the duty of the railroad to provide a safe means of access to and from its station. In that case, quoting from *Pennsylvania Co. v. McCaffrey,* the court stated: "It is its duty, not only to exercise a high degree of care while the passenger is upon the train, but also to use the highest degree of care and skill, reasonably practicable, in providing the passenger a safe passage from the train."

Plaintiff maintains that there was no reasonably safe way to proceed when she alighted, hence her status as a passenger continued until she had a reasonable opportunity to reach a place of safety, and defendant owed her the highest degree of care. Defendant, however, argues that plaintiff was discharged in a place of safety where she would not have been hit had she remained there, and consequently its duty was fully performed.

From the evidence adduced by plaintiff, it does not appear that plaintiff was discharged in an unequivocally safe place, for when the motorman opened the door of the streetcar in the middle of the block it was an invitation to alight, and according to the testimony of plaintiff's witnesses, there was vehicular traffic proceeding alongside the streetcar, which plaintiff would have to circumvent to get to the west sidewalk. However, inasmuch as the streetcars were blocked up to and far beyond the regular stopping point, due to circumstances beyond defendant's control, the

place where plaintiff was discharged was as reasonably safe as the circumstances permitted. Therefore, it can properly be found that plaintiff ceased to be a passenger, and that defendant owed her only the duty of ordinary care. *West Chicago Street Railway Co.* v. *Buckley,* 102 Ill. App. 314.)

What constitutes ordinary care depends upon the circumstances which call for its use. The case at bar is closely analogous to *West Chicago Street Railway Co.* v. *Buckley,* cited by plaintiff, where the plaintiff recovered damages under circumstances where the street railway company stopped its car in the middle of the block, apparently at the passenger's request, and the passenger, walking behind the car, was struck by a car approaching on the other track from the opposite direction. The court therein held that if a safe place to alight had been selected, the plaintiff would cease to be a passenger; however, the company, having invited the plaintiff to alight in the middle of the block, knew where she was, and was still bound to run its cars from the opposite direction with "at least ordinary care," which it failed to do since it rushed the westbound car past the car from which she had just alighted in such a manner and at such a speed that plaintiff was knocked down.

In the instant case, inasmuch as the crosswalks were blocked by defendant's cars, which were lined up to the middle of the block, it could legitimately be inferred that defendant knew that passengers were being discharged by the standing southbound cars, and consequently, as in the *Buckley case,* defendant was bound to run its northbound street cars with at least ordinary care for such passengers by giving the usual signals and proceeding at a rate of speed commensurate with the situation. *Stack v. East St. Louis and Suburban Railway Co.* 245 Ill. 308.

Plaintiff adduced evidence that no signals were given by the modern, quiet-gliding, northbound streetcar, which

was approaching at a speed of 20 miles an hour. Therefore, inasmuch as this court is obliged to consider only the evidence and inferences favorable to plaintiff in determining the propriety of the judgment notwithstanding the verdict, it is apparent that there is sufficient evidence in the record that defendant's conduct constituted a breach of the duty of ordinary care owed to plaintiff, and warranted the submission of that issue to the jury. The judgment notwithstanding the verdict could not be predicated upon plaintiff's failure to establish that element of her complaint.

With reference to the essential element of due care, defendant contends that plaintiff was contributorily negligent, as a matter of law, in leaving the place of safety where she alighted and proceeding between the streetcars to cross to the east side of the street instead of first crossing to the west sidewalk, and then recrossing to the east side at the intersection, and in failing to stop, look and listen as she proceeded between the tracks.

Courts have reiterated that conduct will be deemed contributory negligence as a matter of law where it is of such a nature that reasonable men will not differ in concluding that it exhibited a want of ordinary prudence, or where no other conclusion can reasonably be drawn from the evidence favorable to the plaintiff. (*Stack* v. *East St. Louis and Suburban Railway Co.* 245 Ill. 308.) Defendant's inferences and analysis are not predicated on the evidence favorable to plaintiff as required. As hereinbefore noted, alighting in the middle of the block alongside a lane of moving vehicles which have the right of way is not necessarily a place of safety in which to remain. The traffic presented plaintiff with a danger so that she had to choose between two hazardous routes to get to her destination at the southeast corner of Superior and Clark streets. Plaintiff's choice of crossing between the cars at that point, rather than first risking the traffic to get to the west curb,

and then having to recross both tracks and traffic lanes at the narrow passage available for vehicles and pedestrians in the middle of the intersection, since both crosswalks were blocked, cannot be deemed to evidence a want of ordinary care upon which all reasonable men would agree.

In support of its contention, however, defendant relies upon the case of *Jaroszewski* v. *Chicago Railway Co.* 241 Ill. App. 1. In that case the plaintiff passed between two streetcars which stopped to discharge passengers, at a point some 80 feet from the crossing, and then stepped back between the cars to avoid a car coming from the opposite direction on the other track, but as she did so, she was hit by the forward car which backed up to get off a switch track. The court therein did not direct a verdict, as defendant urges is proper in the instant case, but merely remanded the cause for a new trial on the ground that the plaintiff, without any mitigating facts, voluntarily chose to cross the street not on the crosswalk but several feet north of it. Inasmuch as the determinative factor in that case was the pedestrian's failure to use the nearby crosswalks which were available for use, it is in no way analogous to the case at bar where the crosswalks were blocked and the pedestrians had no such choice, and had, in addition, to circumvent adjacent moving vehicles to get to the sidewalk.

Defendant also relies upon the case of *Ohnesorge* v. *Chicago City Railway Co.* 177 Ill. App. 134, in support of its assertion that plaintiff exhibited a want of due care in proceeding east between the two street cars without seeing the approaching northbound car. The court therein stated, "The time when ordinary prudence requires a pedestrian to look is when he closely approaches and comes to the farther line of the standing car."

In the case at bar there is no evidence that plaintiff at any time proceeded beyond the east rail of the southbound track. According to the testimony of plaintiff's witness, plaintiff stopped when she was directly in front of the car

from which she had alighted, and threw up her hands when she saw the northbound car descending upon her. She was not struck by the front of defendant's car, which would have been the case if she had proceeded beyond the southbound tracks, in view of the narrow distance of at most 12 inches between the cars as they pass. She was hit only by the projecting ventilator which struck her wrist as she threw up her hands in fright.

This interpretation is corroborated by the physical facts, for plaintiff's body was lying on the southbound tracks directly between the two streetcars, and not between the north and south tracks, which would have been the situation had she proceeded further east before stopping. The only part of her body struck from the right, from which direction the car approached, was her wrist, which was broken by the ventilator. Had she proceeded beyond the southbound tracks her body itself would have been struck by the streetcar. Therefore, plaintiff's conduct in stopping before proceeding beyond the southbound tracks clearly conformed to the standard of due care enunciated in the *Ohnesorge case* cited by defendant.

Nor did plaintiff's failure to look and listen or do any other act constitute contributory negligence as a matter of law, for courts have held that there may be many circumstances excusing such failure. *Stack* v. *East St. Louis Railway Co.* 245 Ill. 308.

In the *Stack case,* cited by plaintiff, where the deceased walked behind the car from which he had alighted, not far from the crossing, and was struck by a car from the opposite direction, the court explained that it could prescribe no rule to be observed when a person passes behind the streetcar from which he has alighted and is suddenly confronted by another car. The court rejected the argument, also interposed in the instant case, that a directed verdict should have been entered since the deceased failed to stop, look and listen before going on the track on which

he was killed, inasmuch as the distance between the two cars as they passed was not more than 22 inches and the car on which the deceased had been riding was standing on the track and obstructed his view as he passed around the end of it.

In the instant case there is even less taint of contributory negligence, since plaintiff's view was obstructed to an even greater extent as the distance between the streetcars was at most only 12 inches, and plaintiff did not walk on the track of the approaching car, as did the plaintiff in the *Stack case,* where the issue of contributory negligence was deemed properly submitted to the jury.

In the light of our analysis of the record and the law, we are of the opinion that plaintiff's conduct did not constitute contributory negligence as a matter of law, hence, the judgment notwithstanding the verdict could not properly be predicated on that ground.

We are in agreement with the conclusion of the Appellate Court, however, that plaintiff's failure to comply with the notice requirements of the act establishing the Chicago Transit Authority (Ill. Rev. Stat. 1953, chap. 111⅔, par. 341,) did not bar her claim, and that the case of *Barrett* v. *Chicago Transit Authority,* 348 Ill. App. 83, conclusively disposes of that issue.

In the *Barrett case* the court held that the requirement that notice be given within six months after the accident in order to maintain a civil action for damages for personal injuries against the Chicago Transit Authority did not apply to a case where the injuries were caused by the negligence of the Chicago Surface Lines prior to its acquisition by the Chicago Transit Authority. Liability was imposed on the Chicago Transit Authority on the ground that it assumed the obligation of all existing causes of action against the Chicago Surface Lines.

In the instant case the accident occurred on August 1, 1947, when the streetcar involved was operated by the

Chicago Surface Lines. Plaintiff's cause of action arose at that time and it was not conditioned on the giving of notice. On June 8, 1948, when the complaint was filed, the Chicago Transit Authority had become the successor in interest of the assets and liabilities of the Chicago Surface Lines, and in the instrument of transfer there was a porvision that the Chicago Transit Authority would assume all existing liabilities of the Chicago Surface Lines. That provision was not qualified or limited to those in which notice is given to the Chicago Transit Authority under section 41 of the Metropolitan Transit Authority Act. That notice requirement relates to causes of action against the Chicago Transit Authority for its own tortious acts, and is a condition precedent to the right to maintain such actions. However, in the case at bar the action against the Chicago Transit Authority is not by virtue of its own tortious conduct, but, as in the *Barrett case,* by virtue of its assumption of the liability of the Chicago Surface Lines, and those liabilities cannot be limited by imposing a condition precedent on a cause of action which did not exist at the time the cause arose. The notice requirements of section 41 can be given no such retroactive and tortuous application.

It is our opinion that the Appellate Court erred in entering the judgment notwithstanding the verdict in favor of defendant, and that judgment should be reversed. However, inasmuch as this appeal presented only the propriety of the judgment notwithstanding the verdict, and the issues relating to defendant's motion for a new trial were not presented, the cause is remanded to the Appellate Court for a determination of those issues.

*Reversed and remanded.*