Sally Kiesel, Appellee, v. Chicago Transit Authority, Appellant.

**Gen. No. 46,528.**

First District, Third Division.

April 20, 1955.

Released for publication May 12, 1955.

Thomas C. Strachan, Jr., James O. Dwight, and Arthur J. Donovan, all of Chicago, for appellant; Michael A. Gerrard, of Chicago, of counsel.

Philip H. Corboy, and Shavin & Hamilton, all of Chicago, for appellee; Philip H. Corboy, of Chicago, of counsel.

MR. JUSTICE LEWE delivered the opinion of the court.

Defendant appeals from a judgment for the sum of $2,000 entered on the verdict of a jury in an action to recover damages for injuries sustained by plaintiff due to the alleged negligence of the defendant while plaintiff was a passenger on one of defendant's buses. Defendant's motions for judgment notwithstanding the verdict and for a new trial were overruled.

About three o'clock in the afternoon on February 15, 1950 plaintiff, aged forty-three, boarded one of defendant's eastbound buses on Irving Park road at the intersection of Meade avenue, a north and south street in the City of Chicago. Plaintiff was seated on a long seat on the right side of the bus near the right front exit doors. When the bus reached the intersection of Central avenue it stopped at the customary stopping place near the south curb of Irving Park road. The evidence is conflicting as to the place and cause of plaintiff's fall which resulted in the injuries here complained of.

The original complaint was framed on the theory that defendant negligently operated the bus by starting it "with a jerk," while plaintiff was alighting, which caused her to fall.

Plaintiff testified that while she had her left foot on the step of the bus and her right foot in the street the bus jerked, causing her to fall backward and strike the back of her head on the bus step; that immediately after the occurrence plaintiff had a memory lapse which continued until she reached her home.

Marie Mazza, a passenger, called by the defendant testified that she was seated in the first cross seat on the right side of the bus immediately back of the long seat

14

on which plaintiff was seated; that when the bus reached the intersection of Central avenue it drew close enough to the curb so that "you could step over the curb"; that after the bus stopped it did not move again before plaintiff alighted; that plaintiff was off the bus—"it seems she was up over the curb" when she fell and that where the plaintiff stepped off "it was icy."

The bus driver, Edward Szarek, testified that on the afternoon of the occurrence it was snowing and the road was slippery; that at the intersection of Irving Park road and Central avenue he stopped the bus near the curb "at the regular stop" and then opened the front exit doors; that at the intersection two people boarded the bus and another woman ahead of the plaintiff alighted; that after plaintiff alighted he saw her take two steps away from the bus where she slid and fell to the pavement; that her head rested on the first step; that at no time after the bus was brought to a stop did it move again while the plaintiff was alighting.

Szarek further testified that after plaintiff fell he stopped the bus and asked the plaintiff to come back into the bus; that when plaintiff reboarded the bus and was seated he asked her "if she was hurt" and she responded, "No, I am all right."

The weather report admitted in evidence shows that on the day of the occurrence it was cloudy and cold; that light snow had been falling all day and that during the afternoon of the day plaintiff was injured the temperature ranged from twenty-seven to twenty-eight degrees.

At the close of all proofs plaintiff filed an amended complaint alleging that defendant negligently failed to provide plaintiff with a safe place to alight; that defendant invited plaintiff to alight from the bus at a dangerous place, which defendant knew or in the exercise of the highest degree of care ought to have known; that defendant negligently failed to warn

15

plaintiff that she was alighting in an unsafe place, although in the exercise of the highest degree of care ought to have known of said condition.

Defendant contends that at the close of the evidence plaintiff changed her theory by charging the defendant with negligence in permitting her to alight at an unsafe place without giving her any warning. Support for defendant's contention is found in plaintiff's argument to the jury, which was as follows:

"Mrs. Kiesel didn't tell us that, their witnesses told us there was ice right at the point where she got off.

"Is that satisfying the highest degree of care? Is that satisfying the duty they have to provide all that human vigilance and foresight reasonably can be expected to be done?

"Wouldn't all human diligence and foresight provide for them to let her off at a place where there was not a patch of ice?

"If there was ice on that platform, ladies and gentlemen, did they satisfy their duty of the highest degree of care in providing her with the safe place in which to alight? Is a safe place in which to alight a platform with ice on it? Is a safe place in which to alight a street with a patch of ice on it?

". . .

"They could have taken her down the block, they could have taken her to a different spot. But, they chose a spot where the ice was. I don't care whether it was irregular or regular ice, there was ice there, and they had no right to let her off at that time.

". . .

". . . Whether the bus moved, or did not move, is unimportant, for if it was the ice on the well which caused her to fall the Chicago Transit Authority violated the highest degree of care it owes to the plaintiff."

The defendant complains of plaintiff's instruction number twenty, which reads: "Common carriers of persons are required to do all that human care, vigi-

16

lance and foresight can reasonably do, consistent with the character and mode of conveyance adopted and the practical prosecution of the business, to prevent accidents to the passengers riding upon their streetcar buses, getting them upon or alighting therefrom." An instruction in substantially the same language was approved in Chicago City Ry. Co. v. Bundy, 210 Ill. 39. See also Chicago City Ry. Co. v. Smith, 226 Ill. 178, and Chicago & A. R. Co. v. Byrum, 153 Ill. 131.

The foregoing instruction, however, is wholly unrelated and inapplicable to the theory which plaintiff adopted later that the defendant was negligent in letting her off the bus at an unsafe place. So far as the record shows the icy and slippery condition of the street and sidewalk where the plaintiff fell prevailed generally in the vicinity of the occurrence. The defendant had no control of the public streets and sidewalks where it received and discharged passengers. Therefore it was not responsible for the slippery condition of the street and sidewalk at the intersection where the plaintiff left the bus. "The duty to select a safe place for passengers to board or alight from street cars does not require the carrier to protect such passengers from obvious street dangers, such as those which arise from the operation of other vehicles on the street or from ordinary obstructions, defects, or unevenness of the surface of the street, at the place where the car is stopped. A fortiori, the carrier is not required to exercise a high, or the highest, degree of care to prevent injury to an alighting passenger by reason of conditions existing on the surface of the street at the point where he alights." 13 C. J. S. § 733, pp. 1378, 1379.

In Thomason v. Chicago Motor Coach Co., 298 Ill. App. 626, this court said, "It has been consistently held that if a passenger, in alighting, has as good an opportunity to see and observe conditions as the carrier's servants, and knows that conditions are dangerous in case he or she attempts to alight under such

17

conditions, contributory negligence exists." To the same effect see O'Shea v. Chicago Motor Coach Co., 328 Ill. App. 457; Feeney v. Chicago City Ry. Co., 220 Ill. App. 400.

█ Here there is no evidence tending to show that there was any ice on the platform of the bus or on the steps at the exit door. And, so far as the record shows, the condition of the street where the plaintiff alighted obtained generally in that area. Under these circumstances we think the presence of ice or snow at the intersection at the time of the occurrence did not create an unsafe place for plaintiff to alight so as to warrant the giving of instruction twenty. Moreover, we think the instruction complained of was not only misleading but highly prejudicial.

For the reasons given, the judgment is reversed and the cause remanded for a new trial.

Reversed and remanded for a new trial.

KILEY, P. J. and FEINBERG, J., concur.