BRUCE E. MITCHELL *et al.*, Plaintiffs-Appellants, v. THE CITY OF CHICAGO *et al.*, Defendants-Appellees.

First District (4th Division)   Nos. 1—90—1210, 1—90—1253 cons.

Opinion filed November 7, 1991.

Hayes & Power, of Chicago (Joseph A. Power, Jr., Thomas G. Siracusa, David A. Novoselsky, and Linda A. Bryceland, of counsel), for appellants.

Kelly R. Welsh, Corporation Counsel, of Chicago (Lawrence Rosenthal, Benna Ruth Solomon, and Michelle A. Hutchinson, Assistant Corporation Counsel, of counsel), for appellee City of Chicago.

William Farley and P. Scott Neville, Jr., both of Chicago, for appellee Chicago Transit Authority.

PRESIDING JUSTICE JIGANTI delivered the opinion of the court:

These consolidated appeals stem from a negligence action brought by the plaintiffs, Bruce E. Mitchell and his wife, Mary J. Mitchell, against the defendants, the Chicago Transit Authority (CTA) and the City of Chicago (City). On motions by the CTA and the City, the trial court granted summary judgments in favor of both of the defendants and against the plaintiffs on the grounds that no duty was owed to the plaintiffs. The plaintiffs have appealed, contending that a duty existed under the facts of this case.

On December 1, 1983, plaintiff Bruce Mitchell boarded a CTA bus, paid his fare and purchased a transfer which entitled him to transfer from the bus to a CTA train. The bus stopped at a designated bus stop located on Fullerton Avenue approximately 100 feet east of the nearest intersection at Sheffield Avenue. The bus stop was located underneath the CTA elevated train tracks and directly across from the Fullerton Avenue elevated station. There was no marked crosswalk between the bus stop and the entrance to the El station. Mitchell exited through the front door of the bus and proceeded to cross the street midblock in front of the bus, checking for traffic. As Mitchell and the other passengers from the bus crossed

the street, Mitchell was struck by a car driven by Hernandez Cacok.

The plaintiffs filed an amended complaint alleging negligence against the CTA, the City and Hernandez Cacok.[1] With respect to the CTA, the plaintiffs alleged that at the time of the occurrence, Mitchell was a CTA passenger and was accordingly owed the highest degree of care. The complaint alleged that the CTA breached its duty in several respects, including: failing to warn the plaintiff against crossing in the middle of the street; failing to discharge the plaintiff in a reasonably safe location with respect to the use of the CTA facilities; failing to provide a reasonable manner or method for passengers to transfer from its westbound bus to its El train at that location; failing to provide a reasonably safe pedestrian crosswalk at the bus stop; failing to warn motorists of pedestrians crossing the street at that point; and establishing a bus stop in an unsafe location. With respect to the City, the complaint alleged a duty to establish pedestrian crosswalks where it knew or reasonably should have known that people crossed the street as well as a duty to warn motorists of pedestrians crossing in that area. The complaint stated that the City breached its duty by failing to warn the plaintiff of the danger of crossing the street in midblock; failing to warn motorists of pedestrians crossing at that point; failing to provide a reasonably safe method for pedestrians to cross the street at the designated bus stop; failing to provide a crosswalk; and establishing a bus stop in an area where it knew or should have known that pedestrians would cross in the middle of the block.

After the trial court denied motions to dismiss by both defendants, the defendants filed motions for summary judgment based in part on the grounds that they owed no duty to plaintiff Bruce Mitchell. In their response to the CTA's summary judgment motion, the plaintiffs submitted the affidavit of an engineering expert in the field of traffic safety. The expert attested that he observed the scene of the occurrence and concluded that it was customary for persons transferring from the bus to the El train to cross the street in the middle of the block. He further concluded that the CTA would know that this was occurring. In the expert's opinion, the CTA created an unreasonably dangerous condition by placing a bus stop at that location without providing warning signs or safeguards such as a crosswalk. Separate hearings were held on the defend-

---

[1] The counts against Cacok are not a part of this appeal.

ants' motions for summary judgment. On December 16, 1988, the trial court granted summary judgment in favor of the CTA and against the plaintiffs. On April 5, 1990, the trial court entered summary judgment in favor of the City and against the plaintiffs. The plaintiffs have appealed, contending that both the CTA and the City owed a duty to plaintiff Bruce Mitchell.

██ A duty requires a person to conform to a certain standard of conduct for the protection of another against an unreasonable risk of harm. (*Widlowski v. Durkee Foods* (1990), 138 Ill. 2d 369, 373, 562 N.E.2d 967.) Factors that a court considers in determining the existence of a duty are the foreseeability of the injury; the likelihood of injury; the magnitude of the burden of guarding against the injury; and the consequences of placing that burden upon the defendant. (*Lamkin v. Towner* (1990), 138 Ill. 2d 510, 522, 563 N.E.2d 449.) Foreseeability alone is not an adequate foundation upon which to base the existence of a legal duty. (*Widlowski v. Durkee Foods* (1990), 138 Ill. 2d 369, 562 N.E.2d 967.) The determination of whether a duty exists is a matter of law to be made by the trial court (*Trucco v. Chicago Tribune Co.* (1991), 219 Ill. App. 3d 496 and is subject to *de novo* review on appeal. *Poelker v. Macon Community Unit School District No. 5* (1990), 212 Ill. App. 3d 312, 317-18, 571 N.E.2d 479.

The plaintiffs make two arguments with respect to the CTA. First, they argue that because Bruce Mitchell had purchased a transfer and was proceeding directly to the El station to continue his journey when he was injured, he was still a passenger to whom the CTA owed the highest duty of care. Second, the plaintiffs argue that the CTA created a dangerous condition by placing the bus stop directly across from the El station rather than at a marked crosswalk and thereby assumed a duty to protect persons who crossed in midblock between the bus stop and the El station.

██ ■ The disposition of the plaintiffs' first argument is controlled by the Illinois Supreme Court decision in *Rotheli v. Chicago Transit Authority* (1955), 7 Ill. 2d 172, 130 N.E.2d 172. *Rotheli* addressed the CTA's duty toward persons injured while transferring between CTA conveyances. According to *Rotheli*, the relationship of carrier and passenger "extends to passengers who are given a transfer for continuous passage upon another conveyance of the carrier. Nevertheless, when the carrier discharges the passenger at an intermediate point or at the end of the journey, be it in a public place or otherwise, the duty to exercise the highest degree of care is suspended and *** is resumed when the passenger presents him-

self to the conveyance of the carrier within the time and at the place fixed by the contract." (*Rotheli*, 7 Ill. 2d at 177-78, 130 N.E.2d at 175.) Thus, at the time Mitchell was injured, the passenger-carrier relationship was suspended and the CTA owed Mitchell only a duty to exercise ordinary care. Based on the facts before us, we cannot conclude that the CTA breached its duty of ordinary care. Mitchell was safely discharged at a designated bus stop. The CTA has no duty to protect its passengers from obvious street dangers. (*Crutchfield v. Yellow Cab Co.* (1989), 189 Ill. App. 3d 1091, 545 N.E.2d 961; *Kiesel v. Chicago Transit Authority* (1955), 6 Ill. App. 2d 13, 126 N.E.2d 170.) Furthermore, contrary to the plaintiffs' argument, the Local Governmental and Governmental Employees Tort Immunity Act provides that a local public entity such as the CTA is not liable for injuries caused by its failure to initially provide "regulatory traffic control devices, stop signs, yield right-of-way signs, speed restriction signs, distinctive roadway markings or any other traffic regulating or warning sign, device or marking, signs, overhead lights, traffic separating or restraining devices or barriers." Ill. Rev. Stat. 1989, ch. 85, par. 3—104.

■ The plaintiffs' second argument against the CTA must also fail. Essentially, the plaintiffs maintain that the CTA chose an unsafe location for its bus stop. The responsibility for designating bus stops, however, rests with the City rather than the CTA. (*Crutchfield v. Yellow Cab Co.* (1989), 189 Ill. App. 3d 1091, 1095, 545 N.E.2d 961.) This court in *Crutchfield* specifically rejected the argument that the CTA should be held responsible for the placement of bus stops because the CTA recommends bus stop locations to the City. Although the plaintiffs assert that the *Crutchfield* decision is in error, they have not provided us with any reasoned legal argument to support that assertion. For the foregoing reasons, we conclude that the trial court properly granted summary judgment in favor of the CTA and against the plaintiffs.

With respect to the City, the plaintiffs argue that by establishing a bus stop in midblock directly across from the entrance to the El station, the City induced pedestrians to cross the street at that point and thereby assumed a duty to protect them against the unreasonably dangerous condition the City created. Essentially, the plaintiffs' position is that the City had a duty to refrain from placing the bus stop directly across the street from the El station because it was foreseeable that persons disembarking from CTA buses would cross the street in a location where it was unsafe to do so.

This court recently acknowledged that "[p]edestrians most often observe a cardinal geometric principle: the shortest distance between two points is a straight line. Hence, they often take shortcuts from the areas provided for pedestrian travel." (*Trucco v. Chicago Tribune Co.* (1991), 219 Ill. App. 3d 496, 501.) As stated earlier, however, foreseeability alone does not create the existence of a legal duty. In *Crutchfield v. Yellow Cab Co.* (1989), 189 Ill. App. 3d 1091, 545 N.E.2d 961, this court considered a situation which we deem factually indistinguishable from the one before us. There, the plaintiff's decedent was discharged at a bus stop directly across the street from a school. There was no intersecting street or pedestrian crosswalk at the bus stop. The plaintiff's decedent walked around the front of the bus and was struck by two vehicles as she attempted to cross the street to reach the school. The plaintiff argued that the placement of the bus stop constituted negligence because it was foreseeable that persons disembarking from the bus would cross the street at a point where it was unsafe to do so.

■ The court in *Crutchfield*, relying upon the applicable provisions of the Local Governmental and Governmental Employees Tort Immunity Act (Ill. Rev. Stat. 1989, ch. 85, pars. 3—102(a), 3—103, 3—104), held that because the plaintiff's decedent was crossing the street at a point intended to be used by vehicular, not pedestrian, traffic, she was not an intended and permitted user and was therefore outside the scope of any duty owed by the City. Following the reasoning expressed in *Crutchfield*, the City owed no duty to plaintiff Bruce Mitchell, who crossed the street at a point outside of the marked pedestrian crosswalk. For the foregoing reasons, we conclude that the trial court properly granted summary judgment in favor of the City and against the plaintiffs.

Accordingly, the judgments of the circuit court are affirmed.

Affirmed.

JOHNSON and McMORROW, JJ., concur.