MARIA TREVINO, Plaintiff-Appellant, v. FLASH CAB COMPANY *et al.*, Defendants-Appellees.

First District (4th Division)   No. 1—94—0238

Opinion filed June 8, 1995.

CAHILL, J., concurring in part and dissenting in part.

Fishman & Fishman, Ltd., of Chicago (Ronald W. Fishman, of counsel), for appellant.

Robbins, Salomon & Patt, Ltd., of Chicago (Richard Lee Stavins, of counsel), for appellees.

PRESIDING JUSTICE HOFFMAN delivered the opinion of the court:

In this case, we examine the propriety of orders of summary judgment entered against the plaintiff, Maria Trevino, in an action seeking damages for injuries sustained as an alleged consequence of her wrongful ejection from the defendants' taxi.

In her original complaint for negligence, the plaintiff sought recovery for injuries sustained when she slipped and fell on an accumulation of ice and snow after being ejected from the defendants'

cab. Counts I and II of the original complaint, pled in the alternative, differed only in the duty of care allegedly owed by the defendants to the plaintiff: count I alleged that the highest duty of care was owed, while count II alleged a duty of ordinary care.

On April 5, 1993, the trial court granted the defendants' motion for summary judgment on both counts. On April 16, 1993, the plaintiff filed a motion to vacate that order and sought leave to file an amended complaint containing counts I and II of her original complaint and adding count III alleging willful and wanton misconduct and count IV alleging false imprisonment. On August 26, 1993, the trial court denied the plaintiff's motion to vacate and denied leave to file counts I and II of her proposed amended complaint, but granted the plaintiff leave to file counts III and IV of her amended complaint, which she did on August 30, 1993.

On January 5, 1994, the trial court granted the defendants' motion for summary judgment on counts III and IV of the plaintiff's amended complaint. The plaintiff has appealed the summary judgment entered on counts I and II of her original complaint, the denial of her motion to vacate that order, and the summary judgment granted on counts III and IV of her amended complaint. For the reasons which follow, we affirm in part, reverse in part, and remand this action to the circuit court for further proceedings.

Because our review of the summary judgments entered in this action is *de novo* (*In re Estate of Hoover* (1993), 155 Ill. 2d 402, 615 N.E.2d 736), we have examined all of the pleadings and evidentiary material on file at the time of the entry of the orders appealed from in their light most favorable to the plaintiff (*Kolakowski v. Voris* (1980), 83 Ill. 2d 388, 415 N.E.2d 397). From that evidentiary material, taken with its inferences most favorable to the plaintiff (*Lapidot v. Memorial Medical Center* (1986), 144 Ill. App. 3d 141, 494 N.E.2d 838), we adduce the following facts relevant to the disposition of this appeal.

Due to inclement weather conditions existing in Chicago on January 5, 1991, the plaintiff arranged to be driven from her home at 1243 West Nelson to Illinois Masonic Hospital located at 836 West Wellington, which was a distance of about four city blocks. When she arrived at the hospital for a scheduled physical check-up at about 8 a.m., it was cold, windy, and snowing; about two inches of snow had accumulated on the ground.

Upon completion of her examination at 11 a.m., the plaintiff telephoned the defendant, Flash Cab Co., and requested that a taxi be dispatched to take her from the hospital to her home. At 11:15 a.m., a Flash cab driven by the defendant, Lewis Carmichael, arrived

at the hospital in response to the plaintiff's call. The plaintiff entered the defendants' taxi, announced her destination as 1243 West Nelson, and offered Carmichael directions. After declining the plaintiff's offer, Carmichael, who was unfamiliar with the area, took several wrong turns. With each wrong turn, the plaintiff offered directions, but Carmichael ignored her.

When the taxi reached Racine and Diversey, five blocks from the plaintiff's intended destination, Carmichael stopped the vehicle and ordered the plaintiff out. Not wishing to walk through the snow, the plaintiff again offered Carmichael directions to her home, but he profanely ordered her out of the cab. The plaintiff complied and Carmichael drove off. When she exited the vehicle there was snow, ice, and slush throughout the entire vicinity. The streets and sidewalks had not been cleared and about three inches of snow had accumulated on the ground.

Upon exiting the vehicle, the plaintiff walked to the corner of Racine and Diversey where she attempted to find another taxi. After waiting eight minutes, she decided to walk home. She proceeded north on the west sidewalk of Racine. After walking approximately 560 feet, the plaintiff slipped on ice beneath the snow on the sidewalk, fell, and was injured.

■ Before analyzing the propriety of the summary judgments granted in this case, we will address the defendants' claim that the plaintiff waived her right to appeal the summary judgment entered on counts I and II of her original complaint by filing an amended complaint. The defendants are correct in stating that filing an amended complaint without incorporating the original complaint acts as a waiver of any objection to the dismissal of the original complaint. (*Pfaff v. Chrysler Corp.* (1992), 155 Ill. 2d 35, 610 N.E.2d 51; *Foxcroft Townhome Owners Association v. Hoffman Rosner Corp.* (1983), 96 Ill. 2d 150, 449 N.E.2d 125.) However, we disagree with the defendants' application of that principal to the facts of this case for three reasons: (1) counts I and II of the plaintiff's original complaint were not dismissed, but rather, the trial court granted summary judgment thereon; (2) the plaintiff sought and was denied leave to file an amended complaint incorporating counts I and II; and (3) counts III and IV of the amended complaint refer to and incorporate a number of the factual allegations contained in count I of the plaintiff's original complaint. Consequently, we find no waiver in this case.

In moving for summary judgment on counts I and II, the defendants argued that: (1) they cannot be held liable for injuries sustained from a slip and fall on a natural accumulation of ice and

snow; (2) their duty to the plaintiff ended when she safely alighted from the cab and had a reasonable opportunity to reach a place of safety; (3) a common carrier is not liable to a discharged passenger who slips on premises not owned by the carrier; and (4) as a matter of law, their conduct was not a proximate cause of the plaintiff's injury. The defendants made essentially the same arguments in moving for summary judgment on counts III and IV. We will address the summary judgment granted as to count IV, the plaintiff's false imprisonment action, separately from our analysis relating to counts I and II grounded in negligence and count III alleging willful and wanton misconduct.

■ The elements of a common law action for negligence consist of: (1) a duty owed by the defendant to the plaintiff; (2) a breach of that duty by the defendant; and (3) an injury to the plaintiff proximately resulting from the breach. (*Mieher v. Brown* (1973), 54 Ill. 2d 539, 541, 301 N.E.2d 307.) The determination of whether the plaintiff and the defendant stood in such a relationship to one another that the law imposed a duty of care upon the defendant for the benefit of the plaintiff is a question of law for the court to resolve (*Fancil v. Q.S.E. Foods, Inc.* (1975), 60 Ill. 2d 552, 328 N.E.2d 538; *Cunis v. Brennan* (1974), 56 Ill. 2d 372, 374, 308 N.E.2d 617), while issues relating to breach of duty and proximate cause are ordinarily questions of fact for a jury to decide (*Scott & Fetzer Co. v. Montgomery Ward & Co.* (1986), 112 Ill. 2d 378, 393, 493 N.E.2d 1022; *Ney v. Yellow Cab Co.* (1954), 2 Ill. 2d 74, 84, 117 N.E.2d 74). In our analysis of the issues presented in the instant action, we are concerned with the elements of duty and proximate cause.

■ As the supreme court noted in *Mieher*, the concept of duty is involved, complex, and nebulous; the term is ill-defined and its boundaries are indistinct. (*Mieher*, 54 Ill. 2d at 545.) In determining whether a defendant owed a duty to the plaintiff under any particular circumstance, the court will consider whether the risk of harm to the plaintiff was reasonably foreseeable, the likelihood of injury, the magnitude of the burden of guarding against the risk, the consequences of placing that burden on the defendant, and the public policy and social requirements of the time and community. *Widlowski v. Durkee Foods* (1990), 138 Ill. 2d 369, 373-74, 562 N.E.2d 967.

■ The defendants do not dispute that once a passenger-carrier relationship was established between them and the plaintiff they were required to exercise the highest degree of care for her protection while she was boarding, in, or alighting from their taxi. (*Katamay v. Chicago Transit Authority* (1972), 53 Ill. 2d 27, 29-30, 289 N.E.2d 623; *Loring v. Yellow Cab Co.* (1975), 33 Ill. App. 3d 154, 157,

337 N.E.2d 428.) They dispute the notion that they owed the highest duty of care to protect her from injury after she safely exited their vehicle, and we agree.

The only duty, if any, that is owed by a common carrier to protect its passengers from injuries that might be sustained after they safely alight from the vehicle of conveyance is one of ordinary care. (*Sims v. Chicago Transit Authority* (1954), 4 Ill. 2d 60, 122 N.E.2d 221; *Neering v. Illinois Central R.R. Co.* (1943), 383 Ill. 366, 50 N.E.2d 497; *Davis v. South Side Elevated R.R. Co.* (1920), 292 Ill. 378, 127 N.E. 66.) From the evidentiary material on file in this case, there is no question that the plaintiff had safely exited the defendants' taxi and made her way to a public sidewalk prior to her injury. Since count I of the plaintiff's original complaint alleged that the defendants owed her the highest duty of care at the time of her injury, the entry of summary judgment on that count was appropriate. See *Jones v. Chicago & Northwestern Transportation Co.* (1990), 206 Ill. App. 3d 136, 138, 563 N.E.2d 1120.

The defendants argue here, as they did before the trial court, that their contract of carriage terminated and they owed the plaintiff no further duty of any kind when she safely alighted from their vehicle and had a reasonable opportunity to reach a place of safety. We disagree.

The fact that we have found the plaintiff was able to safely exit the cab terminating the defendants' duty to exercise the highest duty of care for her protection is not to say that she was owed no duty at all. When the plaintiff entered the defendants' cab, she stated her destination. By accepting her as a passenger, the defendants engaged to safely transport her from Illinois Masonic Hospital to her home at 1243 West Nelson. Instead, the plaintiff was wrongfully ejected at a point farther from her home than when she entered the vehicle. Each of the cases cited by the defendants in support of the proposition that all duty owed to the plaintiff ended when she safely exited their cab are readily distinguishable from the facts present in this record. These cases either address the question of when a carrier's duty to exercise the highest degree of care terminates (see *Katamay*, 53 Ill. 2d 27, 289 N.E.2d 623; *Jones*, 206 Ill. App. 3d 136, 563 N.E.2d 1120), or deal with facts establishing that the injured passenger had safely disembarked at his or her desired destination or at a scheduled intermediate transfer point (see *Mitchell v. City of Chicago* (1991), 221 Ill. App. 3d 1017, 583 N.E.2d 60; *Crutchfield v. Yellow Cab Co.* (1989), 189 Ill. App. 3d 1091, 545 N.E.2d 961; *Hanson v. Urbana & Champaign Electric Street Ry. Co.* (1898), 75 Ill. App. 474). In this case, the plaintiff was taken to neither her desired destination nor an

intermediate transfer point. Rather, she was wrongfully ejected at a location of the defendants' choosing, subjecting her to the very perils she sought to avoid by engaging their services.

■ The relationship of carrier-passenger is one that imposes a duty of care upon the carrier for the benefit of the passenger. We can perceive of no compelling reason why this duty should not encompass an obligation on the part of the carrier to protect its passenger from a foreseeable risk of harm in the event of a wrongful ejection. The magnitude of guarding against such a risk is minimal and the only consequence of placing such a burden upon a carrier is to cause it to refrain from wrongfully ejecting its passengers. In point of fact, Illinois has long subscribed to the proposition that a common carrier will be liable for damages proximately resulting from the wrongful ejection of a passenger. (*Illinois Central R.R. Co. v. Sutton* (1870), 53 Ill. 397; *Keeshan v. Elgin, Aurora & Southern Traction Co.* (1907), 229 Ill. 533, 82 N.E. 360.) The question then becomes whether the duty of care owed by a carrier includes an obligation to protect a passenger from foreseeable risks associated with natural accumulations of ice and snow in the event that the carrier wrongfully ejects the passenger at a point other than her desired destination.

The defendants maintain that as a matter of law they owed no duty to protect the plaintiff from the risk of injury due to the natural accumulation of ice and snow. Also, there is no question from the facts in the record that the plaintiff was injured when she slipped on a natural accumulation of ice and snow on a public sidewalk. However, while the defendants' recitation of the natural accumulation rule is correct, we believe that their application of the rule to the facts of this case is misplaced.

■ The owner or possessor of real property is not liable for injuries resulting from the natural accumulation of ice, snow, or water. (*Graham v. City of Chicago* (1931), 346 Ill. 638, 641-43, 178 N.E. 911; *Lansing v. County of McLean* (1978), 69 Ill. 2d 562, 570-71, 372 N.E.2d 822.) This rule has been extended to common carriers in the maintenance of their stations, platforms (*Walker v. Chicago Transit Authority* (1980), 92 Ill. App. 3d 120, 416 N.E.2d 10), and vehicles of conveyance (*Serritos v. Chicago Transit Authority* (1987), 153 Ill. App. 3d 265, 271-72, 505 N.E.2d 1034). Although common carriers are under no duty to remove natural accumulations of ice or snow from their premises or vehicles, the absence of such a duty does not rest upon the notion that the conditions presented by such accumulations are safe. To the contrary, the hazards presented have always been acknowledged, but the imposition of an obligation to remedy those conditions would be so unreasonable and impractical as to negate the

imposition of a legal duty to do so. See *Lansing*, 69 Ill. 2d at 570; *Serritos*, 153 Ill. App. 3d at 271-72.

■ The instant case, however, is not a premises liability action nor is it predicated upon the manner in which the defendants maintained their taxi. This plaintiff seeks recovery premised upon the proposition that she never would have been exposed to the hazards presented by the natural accumulation of ice and snow upon which she fell had it not been for her wrongful ejection from the defendants' cab. The duty imposed upon the defendants in this case does not include any requirement to remedy a natural accumulation of ice or snow and, hence, the natural accumulation rule has no application.

As to the question of a proximate causal relationship between the defendants' wrongful ejection of the plaintiff and her subsequent fall, we believe the issue to be one of fact for a jury to decide. In his discovery deposition, Carmichael admitted he knew of the weather conditions existing at the time that he ordered the plaintiff out of the cab. It had snowed heavily on the morning of the incident leaving a three-inch accumulation. The plaintiff testified that the entire area was covered by snow, slush, and ice. Because the hazard presented by the natural accumulation of snow and ice was known to Carmichael, a jury might well find that a reasonably prudent person in his position ought to have foreseen the likelihood of injury to the plaintiff if she were ejected and forced to walk five blocks through snow and ice to her home. Consequently, the question of whether the accumulation of ice and snow upon which plaintiff fell acted as an intervening cause breaking the causal connection between her wrongful ejection from the defendants' cab and her subsequent injury is one of fact. *Neering*, 383 Ill. 366, 50 N.E.2d 497; *Ney*, 2 Ill. 2d 74, 117 N.E.2d 74.

Additionally, the defendants contend that the tort of wrongful ejection is codified in the Railroad Passenger Removal Act (740 ILCS 135/31 (West 1992)), and since the plaintiff failed to plead a violation of the statute contrary to Supreme Court Rule 133(a) (134 Ill. 2d R. 133(a)), she has waived the right to argue that her action is based upon a theory of wrongful ejection. The defendants' argument in this regard is specious at best. Unless we misread the record, this case has nothing to do with the improper removal of a passenger from a railroad car, the only subject of the statute cited by the defendants.

Based upon the foregoing analysis, we find that the trial court erred in granting summary judgment on count II of the plaintiff's original complaint, which was her negligence action alleging the defendants' breach of a duty of ordinary care.

■ Count III of the plaintiff's amended complaint contains es-

sentially the same factual allegations as were alleged in counts I and II of her original complaint, but is framed in terms of willful and wanton misconduct. Although willful and wanton misconduct is distinguishable from ordinary negligence, the torts share common characteristics. (*Burke v. 12 Rothschild's Liquor Mart, Inc.* (1992), 148 Ill. 2d 429, 593 N.E.2d 522.) An injury can be said to be the result of willful and wanton misconduct when caused by an act or omission committed under circumstances exhibiting a reckless disregard for the safety of others, such as a failure, after knowledge of impending danger, to exercise ordinary care to prevent it. (*Lynch v. Board of Education of Collinsville Community Unit District No. 10* (1980), 82 Ill. 2d 415, 430, 412 N.E.2d 447.) Because we are unable to conclude that the defendants' conduct in this case was insufficient to establish that they acted with a reckless disregard for the safety of the plaintiff, the determination of whether their behavior rose to the level of willful and wanton misconduct remains an issue of fact to be determined by a jury. (*Burke*, 148 Ill. 2d at 451; *O'Brien v. Township High School District 214* (1980), 83 Ill. 2d 462, 469, 415 N.E.2d 1015.) For the same reasons set forth in our analysis relating to count II of the plaintiff's original complaint, we find that it was error to grant summary judgment on count III of her amended complaint.

■ Lastly, we address the summary judgment entered on the plaintiff's false imprisonment claim, as pled in count IV of her amended complaint. To constitute false imprisonment, there must be an unlawful detention or confinement. The facts in this case establish that the plaintiff was neither detained nor confined against her will, unless one absurdly considers the plaintiff to have been confined to all the world except the defendants' taxi. (*Morris v. Faulkner* (1977), 46 Ill. App. 3d 625, 627-28, 361 N.E.2d 112.) Consequently, we affirm the summary judgment entered on count IV of the plaintiff's amended complaint.

In sum, we affirm the trial court's orders granting summary judgment against the plaintiff on count I of her original complaint and count IV of her amended complaint; we reverse the summary judgments entered against the plaintiff on count II of her original complaint and count III of her amended complaint; and we remand this action to the circuit court of Cook County for further proceedings consistent with this opinion.

Affirmed in part; reversed in part and remanded.

S. O'BRIEN, J., concurs.

JUSTICE CAHILL, concurring in part and dissenting in part:

A passenger quarrels with a taxi driver on a snowy morning. In a fit of uncourtly temper the driver orders the woman out of his taxi at a safe place, but short of the home where he promised to take her. Forced to walk, the woman sets out for home, but slips and falls on a natural accumulation of ice and snow.

The majority recognizes that before the issues of negligence and proximate cause are put in play a court must find that a legally sufficient duty exists. It also recognizes that an element of that duty is foreseeability, which requires us to consider: the likelihood of injury, the magnitude of the burden of guarding against the risk, the consequences of placing the burden on the defendant, and the public policy and social requirements of the time and community.

The majority undertakes its analysis against this background and concludes that while the high degree of care imposed on the taxi driver as a common carrier was extinguished when the plaintiff was ejected at a place safe for the moment, a residual duty of ordinary care remained. I concur. (See *Jones v. Chicago & Northwestern Transportation Co.* (1990), 206 Ill. App. 3d 136, 563 N.E.2d 1120.) The taxi driver, after all, agreed to take the plaintiff home. That part of his duty could not be discharged by forcing her out of his taxi at any safe place he chose. The majority then reasons that, given the snowy conditions surrounding her safe place for the moment, it was reasonably foreseeable that she might slip and fall as she continued her journey. I disagree.

I see no reasonably close connection between the wrongful discharge of this passenger, and the harm it originally threatened, with her subsequent fall. To be sure, the weather was what one expects in the dead of a Chicago winter, but the area where she left the taxi was safe, the cleared driveway of a gas station. There is no evidence in the record that the neighborhood or hour was dangerous, or that the weather was so severe that exposure to it alone was a hazard. That might yield a different result. But the likelihood (more of that word in a moment) that she might fall on a natural accumulation of ice and snow was simply not within the scope of foreseeable risk.

If we look at the elements of foreseeability, I am able to find only one that clearly applies to this case: the magnitude of the burden of guarding against the risk. That burden could have been met if the taxi driver had done what he had promised to do and driven the passenger home.

The likelihood of injury is another element of the test. A likelihood is not a certainty. The dictionary calls it a probability. (Webster's Third New International Dictionary 1310 (1986).) Under the facts in this case I am afraid the majority defines it as a possibility.

There remain two elements to be considered: the consequences of placing the burden on the defendant, and the public policy and social requirements of the time and the community. Our supreme court has defined the burden of a common carrier: it is relieved when the passenger is discharged in a place of safety. The majority now holds that if the discharge is wrongful, liability may remain until she reaches her destination, depending upon what happens along the way. Whether what happens along the way will be traceable to the defendant is a question for the jury to decide. The consequences for common carriers and anyone else who offers somebody a ride that is wrongfully interrupted should be obvious. I cannot find an Illinois case that goes as far as the majority goes today.

We can conjure scenarios as suggested earlier where the ejectment of a passenger at a place other than where she intended to go is so fraught with palpable risks foreseeable to the reasonable mind and eye that the common carrier will be seen to have breached his duty of a high degree of care, to say nothing of the duty of ordinary care. The ill-tempered bus driver who ejects noisy children miles short of the schoolhouse is not absolved because the walkway is safe—if the temperature is 30 degrees below zero. But that is not our case.

Because I would grant summary judgment for the defendant, I would not reach the issue of whether the natural accumulation rule shields those without premises liability, nor is there any reason to address the wilful and wanton count. I respectfully dissent.